877 So.2d 655 (2004)
Evelyn BARLOW, etc., Petitioner,
v.
NORTH OKALOOSA MEDICAL CENTER, etc., Respondent.
No. SC02-796.
Supreme Court of Florida.
February 12, 2004.
Rehearing Denied July 8, 2004.
*656 Stanley Bruce Powell of Powell & Swanick, Niceville, FL, for Petitioner.
William K. Thames, II, and Pamela K. Frazier of Lozier, Thames & Frazier, P.A., Pensacola, FL, for Respondent.
Gail Leverett Parenti of Parenti, Falk, Waas, Hernandez & Cortina, P.A., Coral Gables, FL, for Florida Defense Lawyers Association, Amicus Curiae.
PARIENTE, J.
We have for review the First District Court of Appeal's decision in Barlow v. North Okaloosa Medical Center, 809 So.2d 71 (Fla. 1st DCA 2002), based on express and direct conflict with this Court's decision in St. Mary's Hospital, Inc. v. Phillipe, 769 So.2d 961 (Fla.2000), which held that the arbitration provisions of the Medical Malpractice Act[1] specify the damages available when the parties agree to binding arbitration, regardless of whether the medical malpractice action involves a wrongful death. See id. at 973. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons that follow, we quash the First District's decision.

FACTS
Evelyn Barlow brought suit against North Okaloosa Medical Center ("NOMC") for medical malpractice as the result of the death of her husband. NOMC admitted liability and the parties chose to proceed under the alternative arbitration procedure for medical malpractice claims set forth in section 766.207, Florida Statutes (2002). At the conclusion of the arbitration hearing, the panel awarded Mrs. Barlow economic damages in the amount of $102,365.50, which included $93,600 for lost services and $8,765.50 for funeral expenses. However, the panel awarded Mrs. Barlow nothing for loss of earning capacity and lost social security retirement benefits, which she had also claimed as economic damages.[2] With respect to the social security retirement benefits, the panel stated:
No award was made for lost social security benefits to the estate since [Mrs. Barlow] failed to establish that there would exist any net accumulation after consumption. Stated differently, [Mrs. Barlow] failed to demonstrate that the social security benefits did not fairly represent the monies that would have been required to maintain the decedent. Notably, Section 766.207(7)(a), Florida Statutes, calls for an award of "net economic damages," and there is no apparent reason to conclude that established *657 principles used to calculate net economic damages should not apply to this case.
(Emphasis supplied.)
Mrs. Barlow appealed and the First District affirmed the award. See Barlow, 809 So.2d at 73. The First District explained its reason for affirming the award of zero damages for lost social security benefits as follows:
As surviving spouse and personal representative, Mrs. Barlow was entitled to recover the loss of prospective net accumulations, which might reasonably have been expected but for Mr. Barlow's wrongful death, reduced to present money value. See § 768.21(6)(a), Fla. Stat. (2001).
Mrs. Barlow was afforded an opportunity to prove as a predicate for this element of damages the amount, if any, by which Mr. Barlow's estate was diminished on account of his early death. To prove a loss in prospective net accumulations, however, she had to show not only a fall in household income, but also that lower expenses did not offset the drop. See § 768.18(5), Fla. Stat. (2001) (defining net accumulations as that part of earnings "that the decedent probably would have retained as savings and left as part of her or his estate"); Tobias v. Osorio, 681 So.2d 905, 907 (Fla. 4th DCA 1996) (explaining that under the wrongful death statute, "net accumulations" is the part of the decedent's expected income which the decedent probably would have retained as savings). The arbitration panel concluded that Mrs. Barlow failed to carry her burden to prove that there would have been net accumulations, if her husband had lived. See Ellis v. Golconda Corp., 352 So.2d 1221, 1227 (Fla. 1st DCA 1977) (concluding that there was "not any record basis for an award for loss of net accumulation of [decedent's] prospective estate" in the absence of proof of decedent's expenses); Seaboard Coast Line R.R. Corp. v. Robinson, 263 So.2d 626, 627 (Fla. 2d DCA 1972) (reversing a jury award of damages in a wrongful death action where there was no evidence that the decedent's income from social security and gratuitous financial assistance exceeded her day to day needs). On this record, no error has been shown.
Id. (emphasis supplied). Mrs. Barlow sought review in this Court, arguing that the First District's reliance on the definition of "net accumulations," found in the Wrongful Death Act, see § 768.21(6)(a), Fla. Stat. (2002), directly and expressly conflicts with this Court's decision in St. Mary's Hospital.[3]

ANALYSIS
The Medical Malpractice Act, sections 766.201 through 766.212, Florida Statutes (2002), was enacted in 1988, see ch. 88-1, §§ 48-54 at 164-71, Laws of Fla., and contains two main components: "(1) a presuit investigation process to eliminate frivolous claims and (2) a voluntary arbitration process to encourage settlement of claims." University of Miami v. Echarte, 618 So.2d 189, 192 (Fla.1993). With respect to the voluntary arbitration process, section 766.207(7) provides that a claimant who submits to arbitration on the amount of damages can recover, in part,
[n]et economic damages ... including, but not limited to, past and future medical expenses and 80 percent of wage loss *658 and loss of earning capacity, offset by any collateral source payments.
§ 766.207(7)(a), Fla. Stat. (2002). Section 766.202 defines "economic damages" as
financial losses which would not have occurred but for the injury giving rise to the cause of action, including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity.
§ 766.202(3), Fla. Stat. (2002).
In contrast, as noted by this Court in St. Mary's Hospital, "the Wrongful Death Act does not provide claimants with such a full range of economic damages." 769 So.2d at 973. Section 768.21, Florida Statutes (2002), sets forth the damages recoverable under the Wrongful Death Act and provides in pertinent part:
(6) The decedent's personal representative may recover for the decedent's estate the following:
(a) Loss of earnings of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest. Loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death, reduce to present money value, may also be recovered:
1. If the decedent's survivors include a surviving spouse....
§ 768.21(6)(a) (emphasis supplied). Section 768.18(5), Florida Statutes (2002), defines "net accumulations" as
the part of the decedent's expected net business or salary income, including pension benefits, that the decedent probably would have retained as savings and left as part of her or his estate if the decedent had lived her or his normal life expectancy. "Net business or salary income" is the part of the decedent's probable gross income after taxes, excluding income from investments continuing beyond death, that remains after deducting the decedent's personal expenses and support of survivors, excluding contributions in kind.
(Emphasis supplied.) Thus, proof of net accumulations requires not only a showing of "a fall in household income, but also that lower expenses did not offset the drop." Barlow, 809 So.2d at 73.
In St. Mary's Hospital, this Court held that the arbitration provisions of the Medical Malpractice Act specify the damages available when the parties agree to binding arbitration, regardless of whether the medical malpractice action involves a wrongful death. See 769 So.2d at 973. Specifically, we concluded:
The plain language of sections 766.202(3) and 766.207(7)(a) indicates that the full range of economic damages is available to claimants as an incentive to forego a jury trial on damages and proceed to arbitration. The legislative intent of the Medical Malpractice Act also indicates that the arbitration provisions were enacted to address soaring noneconomic damage awards, rather than the more predictable economic damage awards. See § 766.201. If the Legislature intended for the Wrongful Death Act to control the elements of damages available in a medical malpractice arbitration, it could have specifically provided for the application of the provisions of that Act in the Medical Malpractice Act. It has not done so.

Id. (emphasis supplied).
More recently we addressed whether Florida's setoff statutes apply to damages awarded under the arbitration provisions of the Medical Malpractice Act. See Chester v. Doig, 842 So.2d 106 (Fla.2003). For similar reasons as those expressed in St. Mary's Hospital, we concluded that it was not appropriate to set off the amount recovered *659 from a settlement with one tortfeasor against the award of damages recovered in an arbitration with a second tortfeasor for the same incident. See id. at 108-09. In reaching this conclusion, we looked to the plain language of the Medical Malpractice Act and noted that the Legislature had chosen not to provide for the application of the setoff statutes to damages awarded in a medical malpractice arbitration. See id. at 109.
As our decisions in both St. Mary's Hospital and Chester indicate, it is inappropriate to look beyond the language of the Medical Malpractice Act in determining the damages available to a claimant who agrees to proceed with binding arbitration as provided for under that Act. Nonetheless, NOMC asserts that because only net economic damages are recoverable under section 766.207(7)(a), the loss of $5000 in social security retirement benefits should be reduced to achieve a "net" amount and, therefore, looking to the definition of "net accumulations" in the Wrongful Death Act for guidance is appropriate. We disagree.
The Legislature expressly provided that economic damages awarded as a result of medical malpractice arbitration are to be reduced in only two ways. First, a claimant is entitled to only 80 percent of wage loss and loss of earning capacity. See § 766.207(7)(a). Second, economic damages are to be offset by payments from those collateral sources expressly defined in section 766.202(2). See §§ 766.202(2), 766.207(7)(a). Thus, subject only to these reductions, claimants are entitled to a full range of economic damages, which include net "financial losses which would not have occurred but for the injury giving rise to the cause of action." § 766.202(3) (emphasis supplied).
We recognize that during a 2003 special session, the Legislature amended section 766.207(7) to specify that "damages shall be awarded as provided by general law, including the Wrongful Death Act," see ch.2003-416, § 62, at 4107, Laws of Fla., and amended the definitions of "economic damages" and "noneconomic damages" as used in section 766.207(7), adding the phrase "to the extent the claimant is entitled to recover such damages under general law, including the Wrongful Death Act." Id. § 58, at 4103-04. However, these amendments became effective September 15, 2003, see id. § 87, at 4122, and the Legislature has expressly stated in the substance of the legislation that "the changes to chapter 766, Florida Statutes, shall apply only to any medical incident for which a notice of intent to initiate litigation is mailed on or after the effective date of this act." Id. § 86, at 4122 (emphasis supplied). Thus, these amendments do not apply to Mrs. Barlow's case and we express no opinion on their effect, if any, on damages now recoverable in medical malpractice arbitration proceedings.
The dissent asserts that the changes to chapter 766 "reflect[] this subsequent Legislature's interpretation of the original law and provide[ ] some additional support to the reasoning that St. Mary's Hospital and its progeny were wrongly decided." Dissenting op. at 661. However, these amendments were passed three years after this Court's decision in St. Mary's Hospital as part of comprehensive medical malpractice reform that the Legislature concluded was "necessary to alleviate the crisis relating to medical malpractice insurance." Ch.2003-416, § 1, at 4036, Laws of Fla. There is no indication in the statutory language that the amendments were passed as a result of this Court's decisions in St. Mary's Hospital or Chester.
*660 Because the amount of the social security benefit Mr. Barlow would have consumed had he lived is not an authorized deduction in determining Mrs. Barlow's net economic damages under section 766.207, Florida Statutes (2002), we conclude that the First District erred in relying on the concept of net accumulations defined in the Wrongful Death Act when reviewing the economic damages awarded by the arbitration panel. Rather, Mrs. Barlow's net loss of annual social security retirement benefits is the difference between what the Barlows were receiving before Mr. Barlow's death and the amount Mrs. Barlow now receives. Mrs. Barlow's recovery of this social security loss should be measured according to Mr. Barlow's normal life expectancy unless there is evidence from which the arbitration panel could conclude that Mr. Barlow had a reduced life expectancy because of issues unrelated to the medical malpractice. Accordingly, we quash the First District's decision to the extent it is inconsistent with this opinion and remand for further proceedings.
It is so ordered.
ANSTEAD, C.J., and WELLS, LEWIS, QUINCE, and CANTERO, JJ., concur.
BELL, J., dissents with an opinion.
BELL, J., dissenting.
I disagree with the majority's interpretation of the Medical Malpractice Act for two reasons. First, the majority's decision to award Mrs. Barlow the full amount of the decrease in social security benefits effectively reads the word "net" out of the statute. Second, I believe the damages available in voluntary arbitration under sections 766.209(4)(a) and 766.207(7) of the Medical Malpractice Act should be interpreted in conjunction with the Wrongful Death Act and made consistent with the damages available under sections 766.209(2) and 766.209(3)(a).[4]

I. THE DEFINITION OF "NET"
Section 766.207(7)(a), Florida Statutes, provides for an award of "net economic damages." Economic damages are defined in section 766.202(3). The relevant section states:
"Economic damages" means financial losses which would not have occurred but for the injury giving rise to the cause of action, including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity.
§ 766.202(3), Fla. Stat. (2002). The Medical Malpractice Act does not define "net economic damages" or the term "net."
The majority holds that in addition to noneconomic damages and an economic damage award for past and future lost services, Mrs. Barlow should also receive the full amount of the difference between the social security benefits that her husband was receiving while he was alive and the survivor benefits that she now receives.[5] This difference amounts to approximately $5000 per annum. Ignoring what the social security system and other retirement programs recognize, the majority gives Mrs. Barlow more than the net economic damages she suffered. Along *661 with the reduction in social security benefits her husband brought into the home, Mrs. Barlow's total household expenses are reduced by the amount that Mr. Barlow no longer consumes. Therefore, to properly measure "net economic damages" in this case, this reduction in total household expenses must be deducted in some manner from the difference between the social security benefits Mr. Barlow once brought into the home to support both him and his spouse and the survivor's benefits Mrs. Barlow now receives.
Mrs. Barlow's argument, which the majority accepts, that she should receive the full amount of the lost social security benefits as a "financial loss [ ] which would not have occurred but for the injury giving rise to the cause of action," § 766.202(3), Fla. Stat., without consideration of how much this amount should be reduced to produce a "net" financial loss, essentially reads the word "net" out of the statute. This position violates a cardinal rule of statutory construction. "It is a cardinal rule of statutory interpretation that courts should avoid readings that would render part of a statute meaningless." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 456 (Fla.1992). By accepting Mrs. Barlow's argument, the majority renders the express statutory limitation on economic damages meaningless and thus reaches the wrong result. The majority reaches this incorrect conclusion as a direct result of its unwillingness to look to the Wrongful Death Act for guidance. By looking to the guidelines provided in the Wrongful Death Act, the meaning of the term "net economic damages" is easily interpreted.

II. GUIDANCE FROM THE WRONGFUL DEATH ACT
Also, I believe this Court should reconsider its broader position that the Wrongful Death Act does not control the elements of damages available in a wrongful death action brought under the Medical Malpractice Act. See St. Mary's Hosp., Inc. v. Phillipe, 769 So.2d 961, 973 (Fla.2000). The Medical Malpractice Act is ambiguous in that it does not provide a definition of "net economic damages," does not specifically detail the scope of recoverable damages, and does not specifically identify who may recover damages under the Act. The logical consequence of this ambiguity and this Court's decision in St. Mary's Hospital is that without the ability to resort to the Wrongful Death Act for guidance, damage awards in wrongful death actions brought pursuant to section 766.207 have been arbitrary and inconsistent with the Wrongful Death Act. See Chester v. Doig, 842 So.2d 106 (Fla.2003); St. Mary's Hosp.; Barlow.[6]
In a 2003 special session, the Legislature corrected this inconsistency by amending section 766.207(7) to specifically require arbitrators to look to the Wrongful Death Act when awarding damages. Although this change is prospective only, it reflects this subsequent Legislature's interpretation of the original law and provides some additional support to the reasoning that St. Mary's Hospital and its progeny were wrongly decided. This *662 Court has consistently recognized the propriety of considering a subsequent amendment to a statute in interpreting a prior statute when an amendment was enacted soon after a controversy arose. See Parole Comm'n v. Cooper, 701 So.2d 543 (Fla.1997); Lowry v. Parole & Prob. Comm'n, 473 So.2d 1248, 1250 (Fla.1985) (holding that when an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof); Gay v. Canada Dry Bottling Co., 59 So.2d 788, 790 (Fla.1952) ("The court has the right and the duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation."). In this case, the 2003 amendments to section 766.207(7) are supportive of a holding contrary to St. Mary's Hospital. It is supportive of a more reasonable conclusion that the Legislature intended to maintain consistency between awards under the Medical Malpractice Act and the Wrongful Death Act.[7]
The majority states that "[t]here is no indication in the statutory language that the amendments were passed as a result of this Court's decisions in St. Mary's Hospital or Chester" Majority at 9. This statement nicely circumnavigates the clear evidence that the statute was specifically changed to correct the negative impact the St. Mary's decision had upon the continued viability of voluntary binding arbitration. The text of chapter 2003-416 expressly states that the Legislature reviewed the findings and recommendations of the Governor's Select Task Force on Healthcare Professional Liability Insurance and found that the Task Force had established that the medical malpractice crisis could be alleviated by enacting reforms. See ch. 2003-416, § 1(8)  (10), at 4035, Laws of Fla. That Task Force expressly recommended that the Legislature amend sections 766.202 and 766.207 to specifically state that "damages are recoverable in voluntary binding arbitration only if the claimant has the right to recover such damages under general law, including the Wrongful Death Act." Governor's Select Task Force on Healthcare Professional Liability Insurance 300 (2003). And the Legislature followed this recommendation by so amending sections 766.202 and 766.207. Significantly, this Task Force recommendation for statutory amendment was based on the following findings:
As a result of the St. Mary's decision, the Task Force has found that defendants are no longer using arbitration as a means of resolving claims. In sum, the St. Mary's opinion has made it impossible for defendants to offer to arbitrate in wrongful death cases. Those defendants that agree to arbitrate now find themselves at risk of arbitrators awarding damages that are not compensable under Florida law. One speaker to the Task Force cogently noted: "As a result of the St. Mary's decision, the universe of claims in which an offer to arbitrate can reasonably be considered will be limited to these cases with a single claimant, or a decedent with no statutory survivors; with little or no economic damages; ironically, the cases which should not need the assistance of the arbitration mechanism to settle." The Task Force finds that voluntary binding arbitration in Florida is effectively dead as a result of the St. Mary's case. *663 Governor's Select Task Force on Healthcare Professional Liability Insurance 300 (2003) (footnotes omitted). Contrary to the majority's opinion, I find the express reference to the Task Force findings in the legislation, the Task Force finding that "voluntary binding arbitration in Florida is dead as a result of the St. Mary's case," and the actual amendment of the relevant statutory sections as recommended by the Task Force are important indications that the St. Mary's decision was not a correct interpretation of the intent of the original legislation.
For the above reasons, in order to resolve the ambiguities contained in the Medical Malpractice Act that are at issue in this case and to avoid disparate treatment of wrongful death claims brought pursuant to section 766.207, I believe the Medical Malpractice Act is best interpreted in conjunction with the Wrongful Death Act.
Applying the applicable provisions of the Wrongful Death Act to this case, Mrs. Barlow would be entitled to lost support and services, and her husband's estate would be entitled to Mr. Barlow's prospective net accumulations. This result makes all four scenarios for the award of damages provided for in section 766.209 consistent.[8] It is also the result after the new statutory amendments take effect. Therefore, I believe it is the correct result in this case.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] For the purposes of this opinion and consistent with our previous decisions in St. Mary's Hospital and Chester v. Doig, 842 So.2d 106 (Fla.2003), "Medical Malpractice Act" refers to sections 766.201 through 766.212, Florida Statutes (2002).
[2] Before Mr. Barlow's death, Mr. and Mrs. Barlow were receiving a combined annual social security benefit of $16,495.20. Since Mr. Barlow's death, Mrs. Barlow now receives $11,292 in benefits, a decrease of approximately $5000. At the hearing, Mrs. Barlow argued that this loss of $5000 per year should be included in the calculation of economic damages.
[3] Mrs. Barlow also argues that the First District erred in affirming the arbitration panel's award of zero economic damages for loss of earning capacity. We decline to address this claim, which is beyond the scope of the conflict issue. See Kelly v. Comty. Hosp. of Palm Beaches, Inc., 818 So.2d 469, 470 n. 1 (Fla.2002).
[4] As the majority notes on page 8 of their opinion, the Legislature amended section 766.207(7) during a 2003 special session. The new statute specifically provides that damages under the Medical Malpractice Act should be awarded as provided by the Wrongful Death Act. However, this statutory change applies prospectively only.
[5] In addition to the $102,365.50 in economic damages mentioned in the majority opinion, Mrs. Barlow was awarded $240,000 in noneconomic damages.
[6] In St. Mary's Hospital, this Court consolidated two cases for review. See St. Mary's Hosp., Inc. v. Phillipe, 699 So.2d 1017 (Fla. 4th DCA 1997), and Franzen v. Mogler, 699 So.2d 1026 (Fla. 4th DCA 1997). In St. Mary's Hospital, the plaintiffs were allowed to recover for loss of the decedent's earning capacity, even though they would not have been entitled to such a recovery under the Wrongful Death Act. Similarly, in Mogler, the estate of the decedent was awarded lost wages instead of the net accumulations awardable under the Wrongful Death Act.
[7] Although these amendments were passed as part of comprehensive medical malpractice reform, the only substantive changes made to the voluntary arbitration provisions are the ones requiring arbitrators to look to the Wrongful Death Act.
[8] Four relevant scenarios are provided for in section 766.209, Florida Statutes:

1. If neither the claimant nor the defendant requests or agrees to voluntary binding arbitration, the claim proceeds to trial under the Wrongful Death Act. See § 766.209(2) Fla. Stat.
2. If the defendant refuses a claimant's offer of voluntary binding arbitration, the claim proceeds to trial under the Wrongful Death Act. See § 766.209(3)(a) Fla. Stat.
3. If a claimant rejects a defendant's offer to enter into voluntary binding arbitration, the case proceeds to trial but the damages are limited to net economic damages, plus noneconomic damages not to exceed $350,000 per incident. See § 766.209(4)(a) Fla. Stat.
4. If both the defendant and the plaintiff agree to arbitration, the case is arbitrated and damages are limited to net economic damages and noneconomic damages of $250,000. See § 766.207(7)
In scenarios one and two, the claim proceeds to trial and damages are awarded and divided among survivors, spouses, and the estate pursuant to the Wrongful Death Act. Under the St. Mary's Hospital rationale, the same is not true for scenarios three and four.