RAMIREZ, J.
 

 ON MOTION FOR REHEARING OR CLARIFICATION
 

 We deny Afonso’s motion for rehearing, but grant clarification by withdrawing our opinion filed on December 24, 2008, and substituting the following:
 

 
 *766
 
 This is an appeal involving an arbitration award which presents a question of statutory construction, namely, whether section 766.207(7), Florida Statutes (2003), limits awardable economic damages in ar-bitrations to those damages available under the Wrongful Death Act. In other words, the issue presented is whether the 2003 amendments to the Medical Malpractice Act limit economic damages in arbitra-tions involving a wrongful death to those afforded by the Wrongful Death Act. Our review is de novo.
 
 See State v. Rubio,
 
 967 So.2d 768, 771 (Fla.2007). We reverse because we conclude that Mercedes Afonso was not entitled to recover loss of earning capacity as part of her award for economic damages.
 

 Mercedes Afonso, as Personal Representative of the Estate of Alexis Afonso, alleged that Lifemark Hospitals of Florida, Inc., d/b/a Palmetto General Hospital, and others caused the wrongful death of Alexis Afonso on April 10, 2004. He died at age forty-seven during his care and treatment for a flesh eating bacteria. Following a pre-suit investigation, the hospital requested, and Afonso agreed, to voluntary binding arbitration pursuant to sections 766.207(2) and (3), Florida Statutes (2003).
 

 The arbitration panel decided that the economic damages recoverable pursuant to sections 766.202(3) and 766.207(7), were not limited to the damages available under the Wrongful Death Act, section 768.21, Florida Statutes. The Hospital argued that under section 768.21, Afonso’s economic damages were limited to: (1) medical and funeral expenses; (2) loss of support and services (past and future); and (3) loss of net accumulations of the estate, as defined by section 768.18(5). Afonso alleged that she was entitled to a full range of economic damages including loss of earning capacity damages, as well as damages recoverable under the Wrongful Death Act. Non-economic damages were not an issue at the trial level and are not an issue in this appeal.
 

 The question presented in this appeal was resolved against the hospital in
 
 St. Mary’s Hospital, Inc. v. Phillipe,
 
 769 So.2d 961, 973 (Fla.2000), where the Florida Supreme Court concluded that the arbitration provisions of the Medical Malpractice Act expressly specify the elements of all of the damages available when the parties agree to binding arbitration, regardless of whether the medical malpractice action involves a wrongful death. After that decision, however, the legislature amended section 766.207(7) in 2003 and added the underlined language as follows:
 

 766.207(7) — Arbitration pursuant to this section shall preclude recourse to any other remedy by the Claimant against any participating Defendant, and shall be undertaken with the understanding that
 
 damages shall be awarded as provided by general law, including the Wrongful Death Act, subject to the following limitations:
 

 (a) Net economic damages shall be awardable, including, but not limited to, past and future medical expenses and
 
 80
 
 percent of wage loss and loss of earning capacity, offset by any collateral source payments.
 

 The legislature also amended section 766.202(3), adding the underlined language:
 

 “Economic damages” means financial losses that would not have occurred but for the injury giving rise to the cause of action, including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity
 
 to the extent the claimant is entitled to recover such damages under general law, including the Wrongful Death Act.
 

 
 *767
 
 The arbitration panel rejected the hospital’s argument that the 2008 amendments to sections 766.202 and 766.207(7) limited Afonso’s economic damages to those recoverable in a wrongful death action. The panel concluded that the provisions following the “subject to the following limitations language” in section 766.207(7) did not limit the economic damages that could be awarded to those available pursuant to the Wrongful Death Act, but instead supplemented the damages that could be awarded pursuant to that Act. In her order, the Chief Arbitrator wrote:
 

 By the language chosen the Legislature has specifically authorized reference to the Wrongful Death Act, where appropriate, but “subject to the following limitations.” Thus, provisions in the Wrongful Death Act may be relevant in medical malpractice arbitration but are subject to the provisions in Section 766.207(7).
 

 Accordingly, where a provision of the Wrongful Death Act supplements a provision applicable to a medical malpractice arbitration, such as authorizing a person or entity to sue that might not be so authorized under the medical malpractice arbitration statutes, that provision of the Wrongful Death Act controls. However, where a provision of the Wrongful Death Act conflicts with or modifies a provision in the medical malpractice arbitration statute, the medical malpractice arbitration statute controls. This conclusion is dictated by the language of the amendment, which requires that damages are “subject to the following limitations,” and those limitations are the items of damages set forth in Section 766.207, Florida Statutes.
 

 On this appeal, both sides have argued that the statute is unambiguous. We do not agree that section 766.207(7) is unambiguous. Does the “subject to the following limitations” language modify “the Wrongful Death Act,” which would support the arbitrators’ decision, or does it modify “general law,” or does it modify “damages,” the latter two of which would support the hospital’s position? If it modifies “the Wrongful Death Act,” so as to supplement the damages otherwise awardable under the Wrongful Death Act, why would the legislature use the word “limitations”? Whatever clarity is lacking in section 766.207(7) seems to have been resolved in section 766.202(3), where the legislature added the language, “to the extent the claimant is entitled to recover such damages under general law, including the Wrongful Death Act.” Only a strained reading of the statute would lead us to conclude that the new language does not modify “wage loss and loss of earning capacity.”
 

 Shortly after the 2003 amendments, the Florida Supreme Court decided a case controlled by the old statutes. In
 
 Barlow v. North Okaloosa Medical Center,
 
 877 So.2d 655, 656-57 (Fla.2004), the Florida Supreme Court, citing
 
 St. Mary’s Hospital,
 
 held that the “net accumulations” provision of the Wrongful Death Act did not prohibit the claimant from receiving damages for monthly social security benefits received by her husband prior to his death, because the Medical Malpractice Act did not provide for the application of that provision. Accordingly, the Florida Supreme Court rejected the argument that the legislature’s decision to amend sections 766.202(3) and 207(7) indicated that
 
 St. Mary’s Hospital
 
 had been wrongly decided, noting that it did not opine on the effect, “if any,” of the 2003 amendments on damages recoverable under the amended statutes.
 
 Id.
 
 at 659. The Florida Supreme Court also wrote that “[t]here is no indication in the statutory language that the amendments were passed as a result of this Court’s decision in
 
 St. Mary’s Hospi
 
 
 *768
 

 tal.” Id.
 
 Instead, “these amendments were passed three years after this Court’s decision in
 
 St. Manj’s Hospital
 
 as part of comprehensive medical malpractice reform that the Legislature concluded was ‘necessary to alleviate the crisis relating to medical malpractice insurance.’ ”
 
 Id.
 

 Nevertheless, if the legislature had been in agreement with the decision in
 
 St. Mary’s Hospital,
 
 there would have been no need to amend the two statutes.
 
 See Mangold v. Rainforest Golf Sports Ctr.,
 
 675 So.2d 639, 642 (Fla. 1st DCA 1996) (“[W]hen the Legislature makes a substantial and material change in the language of a statute, it is presumed to have intended some specific objective or alteration of law, unless a contrary intent is clear.”). We should give meaning to all provisions of a statute, because “the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of the statute meaningless.”
 
 State v. Goode,
 
 830 So.2d 817, 824 (Fla. 2002). The arbitrators’ decision would render the language added by the Legislature in 2003 unnecessary and meaningless because
 
 St. Manj’s Hospital
 
 already awarded claimants the loss of wages and earning capacity.
 
 See Koile v. State,
 
 934 So.2d 1226, 1233 (Fla.2006) (“[Cjourts should avoid readings that would render part of a statute meaningless.”).
 

 Contemporaneously enacted amendments should not be construed to negate one another.
 
 See American Home Assur. Co. v. Plaza Materials Corp.,
 
 908 So.2d 360, 368 (Fla.2005). Here, construing the “subject to the following limitations” language added to section 766.207(7) to permit the recovery of loss of earning capacity damages would negate the language simultaneously added to section 766.202(3). That language provides for recovery of economic damages only “to the extent” claimants are entitled to recover them under the Wrongful Death Act.
 

 Section 766.202(3) must be read
 
 in pari materia
 
 with section 766.207(7).
 
 See Heart of Adoptions, Inc. v. J.A.,
 
 963 So.2d 189, 199 (Fla.2007) (“[Rjelated statutory provisions must be read together to achieve a consistent whole.”). To read the two provisions in a harmonious manner requires that Afonso be awarded damages for loss of earning capacity only “to the extent” she is entitled to recover those damages pursuant to the Wrongful Death Act.
 

 Finally, we address Afonso’s right of access to the courts constitutional argument. Afonso contends that if this Court agrees with Lifemark then we must affirm because Afonso’s right of access to the courts under Article I, section 21 of the Florida Constitution would be violated. Afonso argues that construing the statutes to limit economic damages in a case such as this would alter “the balance of recoverable damages” approved in
 
 University of Miami v. Echarte,
 
 618 So.2d 189, 193-94 (Fla.1993), solely in favor of negligent healthcare providers. We disagree.
 

 In
 
 Echarte,
 
 which involved an injury rather than a wrongful death, the Florida Supreme Court held that the arbitration statutes and the monetary caps on noneco-nomic damages did not violate the right of access to the courts.
 
 Id.
 
 at 190. The Court held that the statutes provided a “commensurate benefit.”
 
 Id.
 
 at 194-95. The Court also opined that the statutes showed “an overpowering public necessity,” and that no alternative method of meeting such public necessity existed.
 
 Id.
 
 at 196.
 

 Echarte
 
 provides no support for Afonso. First, the facts in
 
 Echarte
 
 do not involve a wrongful death case. Consequently, the economic damages available to the claimant in
 
 Echarte
 
 differed from the economic
 
 *769
 
 damages available to Afonso because wrongful death damages do not include lost wages and loss of earning capacity.
 

 Second, the Florida Supreme Court held in
 
 Echarte
 
 that the arbitration panel’s award of economic damages, which included past and future medical expenses and eighty percent of wage loss and loss of earning capacity (damages twenty percent less than the claimants would have received in court), did not violate the access to courts provision.
 
 See
 
 §§ 766.207, .209 Rule 3.3(b) Fla. Stat. (Supp.1988). Accordingly, economic damages awardable in wrongful death cases that proceed to arbitration pursuant to our decision today are constitutional under
 
 Echarte
 
 because they are coextensive with those awardable in court, that is, damages awardable under the Wrongful Death Act. Thus, because the Florida Supreme Court in
 
 Echarte
 
 held that the access to courts provision was not violated when the claimant received economic damages less than those that were awardable in court, then clearly there is no violation of the access to courts provision here, where the awardable economic damages are coextensive with those that the claimant could have recovered in court.
 

 Moreover, Afonso’s access to courts argument falls short because Article I, section 21 “protects only rights at common law or by statute prior to the enactment of the Declaration of Rights of the Florida Constitution.”
 
 See Kluger v. White,
 
 281 So.2d 1, 4-5 (Fla.1973);
 
 Yachting Promotions, Inc. v. Broward Yachts, Inc.,
 
 792 So.2d 660, 663 (Fla. 4th DCA 2001). A survivor’s right to recover pain and suffering did not become part of the Wrongful Death Act until 1972, and the Declaration of Rights was re-adopted in 1968.
 
 See Martin v. United Sec. Servs.,
 
 314 So.2d 765, 769 (Fla.1975). In addition, in
 
 White v. Clayton,
 
 323 So.2d 573 (Fla.1975), the Florida Supreme Court upheld the 1973 revisions because only the element of damages had changed, and the Legislature had the “prerogative” to make those changes.
 
 Id.
 
 at 575. The
 
 White
 
 Court held that the statute did not violate
 
 Kluger,
 
 but did not cite to Article I, section 21 of the Florida Constitution.
 
 Kluger,
 
 281 So.2d at 5.
 

 We conclude that the Arbitrators erred in permitting Afonso to recover loss of earning capacity in the medical malpractice arbitration. Accordingly, we reverse and remand the arbitration award for recalculation of economic damages for loss of support and loss of net accumulations, as loss of services has been determined and is not in dispute.
 

 Reversed and remanded.