WELLS, Judge.
The State of Florida appeals from an order interpreting the term “sexual intercourse” as used in section 384.24(2) of the Florida Statutes (2011) as meaning only contact between the genitals of a man and a woman and dismissing the charges against the appellee, Gary G. Debaun, for having uninformed HIV[1] infected sexual intercourse with another man. Because we find that the term “sexual intercourse” as used in this provision applies to other behavior, including that between two men, we reverse.
Early in 2011, before entering into a sexual relationship with Debaun, C.M. asked that Debaun provide him with a laboratory report confirming Debaun’s HIV status. Although the laboratory report Debaun provided showed that he was HIV negative, C.M. learned, after having engaged in mutual fellatio and penile-anal penetration by'Debaun, that Debaun was in fact HIV positive. Debaun subsequently was charged with violating section 384.24(2), which makes it a crime for anyone who knows that he or she is infected with HIV to engage in “sexual intercourse” with anyone unless that person *1091 has been informed of the infection and consents to such intercourse:
It is unlawful for any person who has human immunodeficiency virus infection, when such person knows he or she is infected with this disease and when such person has been informed that he or she may communicate this disease to another person through sexual intercourse, to have sexual intercourse with any other person, unless that person has been informed of the presence of the sexually transmissible disease and has consented to the sexual intercourse.
§ 384.24(2), Fla. Stat. (2011).
Claiming that the term “sexual intercourse” as used in section 384.24(2) applies only to penetration of the female sex organ by the male sex organ, Debaun moved to dismiss the charges against him. The court below, while reasoning that the meaning of the term “sexual intercourse” as used in this provision was intended to apply to “any form of sexual activity,” nonetheless dismissed the charges against Debaun because of our sister court’s decision in L.A.P. v. State, 62 So.3d 693 (Fla. 2d DCA 2011). Therein, the Second District held that, for purposes of section 384.24(2), “sexual intercourse” is an act where a male’s penis is placed inside a female’s vagina and therefore section 384.24(2) did not apply to the activities (oral sex and digital penetration between two women) involved there.
The issue before us is one of statutory construction and is subject to de novo review. See Fla. Dep’t of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So.2d 1260, 1264 (Fla.2008). While we need not determine whether the term “sexual intercourse” as used in section 384.24(2) encompasses any and all forms of sexual activity, including all of the activities (i.e., digital penetration) at issue in L.A.P., we do find that the term encompasses more than just penetration of the female sex organ by the male sex organ and includes the acts at issue here (fellatio and penile-anal penetration).
“When a statute is clear, courts will not look behind the statute’s plain language for legislative intent or resort to rules of statutory construction to ascertain intent.” Paul v. State, 112 So.3d 1188, 1195 (Fla.2013) (quoting State v. Burris, 875 So.2d 408, 410 (Fla.2004)). Rather, the court will first look to the language of the statute itself because the statute’s plain and ordinary meaning best reflects legislative intent. Id.
Where, as here, the legislature has not defined words used in a statute, it is appropriate to refer to dictionary definitions to ascertain the plain and ordinary meaning of a word. Id.; see also Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Sch., Inc., 3 So.3d 1220, 1233 (Fla.2009). In this case, the dictionary definition of the term “sexual intercourse” when section 384.24 was enacted in 1986 is broader than just penetration of a vagina by a penis. In 1986, “sexual intercourse” was defined as:
Sexual intercourse n 1: heterosexual intercourse involving penetration of the vagina by the penis: COITUS 2: intercourse involving genital contact between individuals other than penetration of the vagina by the penis
Merriam Webster’s Third New International Dictionary 2082 (1986). Thus, De-baun and C.M. engaged in acts which fall within the plain and ordinary meaning of the term “sexual intercourse” as used in section 384.24(2). See E.A.R. v. State, 4 So.3d 614, 629 (Fla.2009) (“The intent of the Legislature is the polestar of statutory construction. To discern this intent, the Court looks ‘primarily[5] to the plain text of the relevant statute, and when the text is *1092 unambiguous, our inquiry is at an end.”) (citation omitted).
Because we find that the plain and ordinary meaning of the term “sexual intercourse” as used in section 384.24(2) includes more than an act where a male’s penis is placed inside a female’s vagina, we need not, as did our sister court in L.A.P., look to case law defining this term as used in other statutes. While reference to case law and other statutes is a permissible means of determining the plain and ordinary meaning of words of common usage, we believe doing so in this case thwarts the legislative intent behind this law. See Paul, 112 So.3d at 1195 (quoting Burris, 875 So.2d at 410) (recognizing that the “statute’s plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent”).
In reaching this determination, we are guided by the tenets that a statute “must be construed in its entirety and as a whole,” see Koile v. State, 934 So.2d 1226, 1233 (Fla.2006) (quoting St. Mary’s Hosp., Inc. v. Phillipe, 769 So.2d 961, 967 (Fla.2000)), and in such manner that it does not “render part of [the] statute meaningless.” Id. (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 456 (Fla.1992)). To this end, “sexual intercourse” must be read in the context of not only section 384.24, but also in the context of Chapter 384 as a whole. See Fla. Dep’t of Envtl. Prot., 986 So.2d at 1265-66; Miele v. Prudential-Bache Sec., Inc., 656 So.2d 470, 472 (Fla.1995) (“[T]he context in which a term is used may be referred to in ascertaining the meaning of that term.”); Ceco Corp. v. Goldberg, 219 So.2d 475, 476-77 (Fla. 3d DCA 1969) (recognizing that “[o]ur task as a reviewing court is to afford a logical construction according to the general terms and intentions of the entire ... Act,” and that “it is axiomatic that we construe the statute as a whole entity ... in order to arrive at a construction which avoids illogical results”).
Chapter 384, of which section 384.24(2) is a part, is titled the “Control of Sexually Transmissible Disease Act” and addresses the threat to the public posed by sexually transmitted diseases. § 384.21, Fla. Stat. (2011); § 384.22, Fla. Stat. (2011). Section 384.23 defines a “sexually transmissible disease” as “a bacterial, viral, fungal, or parasitic disease” such as “chancroid, gonorrhea, granuloma inguinale, lympho-granuloma venereum, genital herpes simplex, chlamydia, nongonococcal urethritis (NGU), pelvic inflammatory disease (PID)/acute salpingitis, syphilis, [and] human immune deficiency virus infection [HIV].” § 384.23(3), Fla. Stat. (2011). Section 384.22 states as the Act’s purpose the intent to reduce the spread of these diseases:
Findings; intent. — The Legislature finds and declares that sexually transmissible diseases constitute a serious and sometimes fatal threat to the public and individual health and welfare of the people of the state and to visitors to the state. The Legislature finds that the incidence of sexually transmissible diseases is rising at an alarming rate and that these diseases result in significant social, health, and economic costs, including infant and maternal mortality, temporary and lifelong disability, and premature death. The Legislature finds that sexually transmissible diseases, by their nature, involve sensitive issues of privacy, and it is the intent of the Legislature that all programs designed to deal with these diseases afford patients privacy, confidentiality, and dignity. The Legislature finds that medical knowledge and information about sexually transmissible diseases are rapidly *1093 changing. The Legislature intends to provide a program that is sufficiently flexible to meet emerging needs, deals efficiently and effectively with reducing the incidence of sexually transmissible diseases, and provides patients with a secure knowledge that information they provide will remain private and confidential.
§ 384.22, Fla. Stat. (2011).
To this end, section 384.24(l)-(2) makes it unlawful for “any person” who has any of these diseases to have “sexual intercourse” with any “other person” without informing that person of the sexually transmissible disease.[2] Many of the defined diseases may be transmitted by means other than penetration of the vagina by a penis. Blood, semen and vaginal secretions from an HIV-infected person can transmit HIV to another man or woman. See Centers for Disease Control and Prevention, http://www.cdc.gov/hiv/ resources/qa/transmission.htm. HIV transmission most commonly occurs through anal sex (penile-anal penetration) and vaginal sex (penile-vaginal penetration), but can occur through oral sex (mouth to genital contact) as well. Id. Genital herpes simplex may also be spread by anal, vaginal, or oral sex. See Centers for Disease Control and Prevention, http:// www.cdc.gov/std/Herpes/STDFact-Herpes. htm. So, too, may gonorrhea. See Centers for Disease Control and Prevention, http://www.cdc.gov/std/gonorrhea/ STDFact-gonorrhea.htm. In short, because the purpose of Chapter 384 is to prevent the spread of sexually transmissible diseases, many of which are transmitted by sexual contact other than vaginal penetration by a penis, it makes no sense to interpret the only act prohibited — sexual intercourse — as including only penetration of the vagina by the penis. Such a result would be absurd. See Paul, 112 So.3d at 1195; State v. Iacovone, 660 So.2d 1371, 1373 (Fla.1995) (“Statutes, as a rule, “will not be interpreted so as to yield an absurd result.’ ” (quoting Williams v. State, 492 So.2d 1051, 1054 (Fla.1986))).
Our analysis is further supported by the fact that the Venereal Diseases Act, the predecessor to the “Sexually Transmissible Disease Act” which is currently encompassed in Chapter 384, made it unlawful only for a woman with a venereal, or sexually transmissible disease, to engage in “sexual intercourse” with a man and vice versa:
Sexual intercourse with person afflicted with venereal disease illegal.— It is unlawful for any female afflicted *1094 with any venereal disease, knowing of such condition, to have sexual intercourse with any male person, or for any male person afflicted with any venereal disease, knowing of such condition, to have sexual intercourse with any female.
§ 384.02, Fla. Stat. (1985).[3]
In 1986, all portions of the Venereal Diseases Act were repealed and replaced by the current Sexually Transmissible Disease Act. See Ch. 86-220, § 91, at 1681, Laws of Fla.; Ch. 86-220, § 91, at 1676-1681, Laws of Fla. The new Act expanded the number of diseases being regulated from the original three, syphilis, gonorrhea, and chancroid, to include granuloma inguinale, lymphogranuloma venereum, genital herpes simplex, chlamydia, nongo-nococcal urethritis (NGU), pelvic inflammatory disease (PID)/acute salpingitis, and the precursor to HIV. It also expanded its application from only sexual intercourse between “any female ... with any male person” and “any male person ... with any female,” to sexual intercourse between “any person ... with any other person.” Compare § 884.02, Fla. Stat. (1985) with § 384.24, Fla. Stat. (1986).
By virtue of these changes, it is evident that the legislature sought not only to address additional sexually transmissible diseases, but also to expand the definition of “sexual intercourse” beyond relationships between only a man and a woman. See generally Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639, 642 (Fla. 1st DCA 1996) (“When the Legislature makes a substantial change in the language of a statute, it is presumed to have intended some specific objective or alteration of law, unless a contrary indication is clear.”); see also Lifemark Hosps. of Fla., Inc. v. Afonso, 4 So.3d 764, 768 (Fla. 3d DCA 2009) (citing and quoting Mangold with approval).
In light of the foregoing we do not feel constrained to adopt, as did the Second District, the definition of “sexual intercourse” contained in other statutes, see § 826.04, Fla. Stat. (2013) (criminalizing incest between related persons); § 827.071, Fla. Stat. (2013) (criminalizing sexual abuse of children), or in case law. In particular, we do not apply the definition utilized by this court in Lanier v. State, 443 So.2d 178, 183 (Fla. 3d DCA 1983), overruled on other grounds by State v. Lanier, 464 So.2d 1192 (Fla.1985). There, this court determined whether consensual penetration of a twelve-year-old girl’s vagina by the penis of an adult man constituted “handling” and “fondling” as proscribed by section 800.04 of the Florida Statutes (1981).[4] Deciding that the adult man had engaged in sexual intercourse— there described as the contact of the sexual organs of two people and penetration of the body of one by the other — with the girl, and not in “handling” or “fondling” her, this court stated:
The information herein charged the defendant with the handling and fondling by engaging in sexual intercourse. Such an allegation does not, in our view, set forth a crime contemplated by Section 800.04. Fundamental rules of stat *1095 utory construction require that “[w]ords used by the legislature are to be construed in their plain and ordinary sense.” Reino v. State, 352 So.2d 853, 860 (Fla.1977). “Handle” is commonly defined as “to touch, feel, hold, take up, move, or otherwise affect with the hand” or to “use the hands upon.” Webster’s Third International Dictionary 1027 (1961). See also Black’s Law Dictionary 843 (rev. 4th ed. 1968). “Fondle” is a synonym for “caress,” and the pertinent definition is “to handle tenderly,” Webster’s, supra at 883, again implying the use of one’s hands. “Sexual intercourse,” on the other hand, “means actual contact of the sexual organs” of two persons and penetration of the body of another. Williams v. State, 92 Fla. 125, 127, 109 So. 305, 306 (1926) (citation omitted). Since the legislature specifically used words of distinct and clear meaning in Section 800.04, the courts “may not invade the province of the legislature and add words which change the plain meaning of the statute.” Therefore, reading “handle” or “fondle” as the trial court did in this case to include sexual intercourse is erroneous.
Lanier, 443 So.2d at 182-83 (some citations omitted).
The question here is not whether the terms “handle” or “fondle” encompass vaginal/penile penetration. The issue here is whether the term “sexual intercourse” used in the context of a statutory scheme enacted to prevent the spread of sexually transmissible diseases — a number of which may be spread by means other than vaginal/penile penetration — encompasses conduct beyond vaginal/penile penetration to include the conduct at issue here. We find that it does.
Accordingly, because we conclude that the plain and ordinary meaning of the term “sexual intercourse” as used in section 384.24(2) includes more than an act where a male’s penis is placed inside a female’s vagina, and encompasses the oral and anal sexual activity involved here, we reverse the order on review and remand for reinstatement of the charges against Debaun. In doing so we certify conflict with the decision in L.A.P. v. State, 62 So.3d 693 (Fla. 2d DCA 2011).[5]
Reversed and remanded; conflict certified.
LAGOA, J., concurs.

. HIV stands for human immunodeficiency virus.

. All sexually transmissible diseases covered by Chapter 384, including HIV, have been subject to the foregoing analysis since the Control of Sexually Transmissible Disease Act was enacted in 1986. When enacted, the Act referred to "human T-lymphotropic virus type III (HTLV-III) infection.” See Ch. 86-220, § 90, at 1677, Laws of Fla.; § 384.23(3), Fla. Stat. (1986); § 384.24, Fla. Stat. (1986). HTLV-III is a "species” of human immunodeficiency virus 1 "that is the most prevalent HIV.” HIV-1 Definition, http://www. merriam-webster.com/dictionary/hiv-1 (last visited October 28, 2013). The Florida legislature amended the Act in 1988 to replace HTLV-III with "human immune deficiency virus infection [HIV],” and also added the element of consent by the uninfected person. See Ch. 88-380, § 26, at 2016, Laws of Fla.; § 384.23(3), Fla. Stat. (1988); § 384.24, Fla. Stat (1988). In 1997, the Florida legislature added subsections to section 384.24 that had not been there at its inception-placing HIV in subsection (2) and leaving all other sexually transmissible diseases in subsection (1). See Ch. 97-37, § 1, at 221-22, Laws of Fla. Beyond this change, the language in subsections (1) and (2) is identical. Id. At the same time, the legislature amended the penalties for violating section 384.24, upping the uniformed, unconsented transmission of HIV to a third degree felony and leaving the penalty for said transmission of the other diseases as a first degree misdemeanor. See Ch. 97-37, § 2, at 222, Laws of Fla; § 384.34(1), (5) Fla. Stat. (1997).

. At the time, the term "venereal diseases” was defined as including only syphilis, gonorrhea and chancroid. See § 384.01, Fla. Stat. (1985).

. Section 800.04 of the Florida Statutes (1981) at that time provided:
Any person who shall handle, fondle or make an assault upon any child under the age of 14 years in a lewd, lascivious or indecent manner, or who shall knowingly commit any lewd or lascivious act in the presence of such child, without the intent to commit sexual battery, shall be guilty of a felony of the second degree....
Lanier, 443 So.2d at 181, n. 2.

. While this appeal was pending in this court, the Fifth District Court of Appeal issued its decision in State v. D.C., 114 So.3d 440 (Fla. 5th DCA 2013). That court employed a similar analysis to that set forth herein in finding that the term "sexual intercourse" as used in section 384.24(2) is not limited to heterosexual vaginal intercourse.