951 So.2d 945 (2007)
Ralph HAWKER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-808.
District Court of Appeal of Florida, Fourth District.
March 7, 2007.
Rehearing Denied April 16, 2007.
*946 Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Sue-Ellen Kenny, Assistant Attorney General, West Palm Beach, for appellee.
GUNTHER, J.
Ralph Hawker was found to be a sexually violent predator and was civilly committed under the Jimmy Ryce Act[1] following a jury trial. Hawker challenges the admission of expert testimony at the trial, both on grounds of relevance and discovery violation. We affirm.
In 1988, Hawker pleaded guilty to two counts of lewd assault on minors and was placed on community control for one year followed by probation for ten years (with adjudication withheld). One of the conditions of Hawker's community control and probation was that he "[h]ave no contact with children under 16 unless supervised by an adult who is aware of these charges."
Hawker's community control was modified later in 1989 upon a violation for having unsupervised contact with a boy under the age of sixteen. Hawker's community control was modified to Community Control II, and his probation was continued.
In 1997, an affidavit of violation of probation was filed against Hawker. Hawker was accused of violating his probation by having contact with and committing sexual battery on two children, J.D. and C.C., while they were under the age of sixteen. Hawker was found to have violated probation on some of the grounds alleged,[2] his *947 probation was revoked, and he was sentenced to concurrent terms of 5.5 years in prison on each of the underlying lewd assault convictions. Before his release from prison in 2000, the State filed a notice of its intention to seek the involuntary civil commitment of Hawker as a sexually violent predator under the Jimmy Ryce Act.
Prior to the commitment trial, several mental health professionals filed evaluations of Hawker, including Chris P. Robison, Ph.D., a clinical and forensic psychologist. Robison interviewed Hawker in February 2000, when Hawker was eighty years old, shortly before his release from prison. Hawker denied a history of homosexual experimentation and denied having any sexual contact with underage males, including the alleged contact with J.D. and C.C. that gave rise to the 1997 violation of probation proceedings. In the 2000 report, Robison concluded that: "The evidence of Mr. Hawker's history of inappropriate sexual behavior with children seems tenuous; however, in light of the numerous and repeated allegations by prepubescent males, it appears likely that Mr. Hawker satisfies diagnostic criteria for Pedophilia, Sexually Attracted to Males, Nonexclusive Type." However, based on the unsubstantiated 1997 probation violation allegations made by J.D., and because Hawker did not pose a high risk for re-offense due to the relatively benign nature of his assaults (fondling), his advanced age, and the period of time between offenses (nearly ten years), Robison concluded that Hawker was not likely to re-offend so that he did not satisfy the criteria for Jimmy Ryce Act involuntary civil commitment.
In January 2004, Robison updated his 2000 report at the request of the state attorney assigned to Hawker's case. At this time Robison was provided with the transcript of Hawker's 1997 violation of probation hearing in which Hawker admitted to engaging in sexual intercourse with J.D. after he turned sixteen.[3] As a result, Robison's 2000 conclusion that J.D.'s unsubstantiated testimony was supported by Hawker's advanced age, denial of homosexual conduct, and relatively benign sexual conduct, was contradicted by Hawker's own admission that he had engaged in sexual intercourse with J.D. after he turned sixteen. Based on Hawker's admission, Robison concluded in this January 2004 report that it was likely that Hawker had been assaulting J.D. since he was nine or ten as J.D. alleged, and that his belief that Hawker had not re-offended for nearly ten years was also contradicted (along with his belief that Hawker's conduct had not escalated beyond fondling). As a result of Hawker's admission, Robison changed his recommendation to a conclusion *948 that Hawker satisfied the criteria for Jimmy Ryce Act commitment.[4]
In December 2004, Robison filed a subsequent report reaching the same conclusion as the January 2004 report.[5] Robison provided two reasons for his opinion that Hawker satisfied the requirements for civil commitment. First, Robison noted that in 2000 he believed that given Hawker's advanced age, his conduct being limited to relatively benign fondling, and nearly a ten-year gap between incidents, Hawker did not satisfy the requirements for civil commitment. However, when Robison was provided with the documentation establishing Hawker's admission to sexual intercourse with J.D. after he turned sixteen, Robison revised his opinion based on a new understanding of the extent and duration of Hawker's sexual conduct. Second, Robison explained that he interviewed Hawker for a second time in November 2004, and Hawker "demonstrated ongoing denial and minimization regarding his offense history," including denying his admission regarding J.D. until confronted with the documentation. Hawker also did not agree that sex with young boys was wrong or that such behavior could be harmful to young boys. These denials demonstrated beliefs that might promote re-offense.
Prior to the civil commitment trial, Hawker filed a motion in limine seeking to exclude certain matters and testimony from evidence at trial. Hawker sought to exclude references to, inter alia, allegations of a sexual nature involving J.D. and C.C. not deemed proven during the 1997 violation of probation hearing, parts of Robison's reports which relied on such allegations, and any references to Hawker's homosexual experiences with J.D. after he turned sixteen.
The trial court held a hearing and granted, in part, Hawker's motion in limine at the start of the civil commitment trial. The trial court excluded evidence regarding the 1997 allegations involving J.D., because such evidence was unreliable where it was rejected as a basis for violation of probation. The trial court also excluded evidence of any relationships between Hawker and "adults" (including J.D. after he turned sixteen) after Hawker contended that they were not relevant to the commitment trial and were more prejudicial than probative. Finally, the trial court reserved ruling on the admissibility of Robison's reports, but later determined that any evidence that referenced the excluded evidence regarding J.D. (and others) would not be admissible.
At the civil commitment trial, Robison began to testify about his initial evaluation of Hawker, and Hawker objected that through Robison's discussion of that evaluation he might touch on evidence excluded by pretrial rulings. The trial court called a recess and directed the State and Robison to discuss how to approach Robison's testimony to avoid reference to J.D. and other excluded matters.
Upon reconvening, Robison's testimony continued in the presence of the jury. When asked why his recommendation had changed between his 2000 and 2004 evaluations, he indicated that one of the reasons was Hawker's admission to having sexual intercourse with a boy (without mentioning J.D.'s name)[6] after he turned sixteen. *949 Hawker objected and moved for a mistrial based on the motion in limine rulings. The trial court decided to hold a bench conference because it was under the impression that Hawker's "consensual" sexual activity had played no role in Robison's evaluation and would need to reconsider its ruling if that activity was relevant to Robison's conclusion that Hawker satisfied the requirements for civil commitment.
During the ensuing proffer, Robison explained that Hawker's admission concerning J.D. impacted his recommendation for two reasons. First, the admission concerning J.D. confirmed that Hawker was sexually active at an advanced age, contrary to Robison's prior belief, and challenged his denial of homosexual conduct, thereby significantly impacting Robison's understanding of the scope of Hawker's sexual conduct (which now clearly exceeded fondling), so as to heighten the risk and potential severity of re-offense. Second, the admission concerning J.D. detracted from Hawker's credibility and lent credibility to J.D.'s 1997 allegations of sexual activity with Hawker.
Hawker's counsel then cross-examined Robison on his proffer and confronted him with deposition answers given between the December 2004 report and the January 2005 trial. In the answers, Robison indicated that Hawker's sexual activity with J.D. after he turned sixteen was diagnostically but not globally significant and that such activity was not diagnostically or legally significant standing alone.[7] Robison then admitted that the significance of the sexual activity in part was linked to the likelihood that sexual activity had begun between Hawker and J.D. before he turned sixteen. However, Robison also testified that the admission was significant in two other respects: it demonstrated that Hawker was not honest about the nature and scope of his sexual encounters and it corroborated J.D.'s allegations.
The trial court then reversed its motion in limine ruling, concluding that Hawker's sexual conduct with J.D. after he turned sixteen was relevant to Robison's opinion, but maintained the ruling that Hawker's contact with J.D. prior to sixteen was inadmissible. Hawker's counsel moved for a mistrial objecting to the trial court's reversal of the motion in limine ruling, and the trial court denied the motion. Hawker's counsel later asserted a specific objection to Robison's changed opinion regarding the significance of Hawker's sexual contact with J.D. after he turned sixteen, asserting that such was a discovery violation, and moved for a mistrial. The trial court denied the motion for mistrial. Robison ultimately explained to the jury why Hawker's admission affected his earlier recommendation regarding involuntary civil commitment, discussing the change in his presumptions regarding sexual activity at an advanced age, the type of sexual activity undertaken (homosexual in nature and in excess of fondling in scope), and Hawker's credibility. Robison did not tell the jury that the admission also could have bolstered J.D.'s credibility concerning the allegations of sexual conduct between Hawker and J.D. before he turned sixteen.
*950 The jury unanimously found Hawker to be a sexually violent predator. Thereafter, Hawker filed a Motion to Set Aside Verdict and Motion for New Trial. Hawker sought a new trial on grounds that the trial court erred by reversing its motion in limine ruling and permitting Robison to testify regarding Hawker's sexual relationship with J.D., erred by denying Hawker's motion for mistrial, and erred by not finding a discovery violation after Robison changed the reasoning for his opinion concerning civil commitment. The trial court denied Hawker's post-trial motion, and Hawker was committed as a sexually violent predator.
On appeal, Hawker contends that the trial court erred by reversing its motion in limine ruling regarding Hawker's sexual relationship with J.D. after he turned sixteen because such evidence was irrelevant. Hawker also contends that this changed ruling resulted in a discovery violation by permitting Robison to testify regarding Hawker's admission as the basis for the change in his commitment recommendation.
Turning to Hawker's first contention, "[r]elevant evidence is evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. A material fact in Hawker's civil commitment hearing regarded his likelihood to re-offend, because that likelihood impacted whether the requirements for civil commitment were satisfied. The evidence of Hawker's admission to engaging in sexual intercourse with J.D. after he turned sixteen tended to prove that he had a likelihood to re-offend that was sufficient for civil commitment under the Jimmy Ryce Act. This is so because the admission demonstrated to Robison that Hawker remained sexually active despite his advanced age, Hawker engaged in homosexual activity, and that Hawker's sexual activity exceeded relatively benign conduct such as fondling. Therefore, the admission was relevant evidence because it formed a basis for Robison's determination of the material fact of Hawker's likelihood to re-offend so as to satisfy the requirements for civil commitment under the Jimmy Ryce Act.
In light of the relevance of Hawker's admission to Robison's evaluation and recommendation, we reject Hawker's contention that the trial court abused its discretion by reversing its motion in limine ruling excluding the admission. See Nardone v. State, 798 So.2d 870, 874 (Fla. 4th DCA 2001)("The standard of review for admissibility of evidence is abuse of discretion. See Melendez v. State, 700 So.2d 791 (Fla. 4th DCA 1997). However, a trial court's discretion is limited by the rules of evidence. See Taylor v. State, 601 So.2d 1304, 1305 (Fla. 4th DCA 1992)"). It is well-settled that motion in limine rulings are subject to change during trial as the trial court develops an understanding of the facts and circumstances of the case. See Donley v. State, 694 So.2d 149, 150 (Fla. 4th DCA 1997)("A judge's pretrial ruling on a motion in limine is `entirely tentative.' State v. Zenobia, 614 So.2d 1139 (Fla. 4th DCA 1993). Such a ruling may be based on an incomplete oral proffer or on the trial court's limited understanding of the issues in the case, not having heard the first bit of evidence. The shifting sands of the trial in progress may cause a judge to rethink an earlier evidentiary ruling based on a maturing understanding of the case. See Blackburn v. State, 314 So.2d 634, 641 (Fla. 4th DCA 1975)."). In the case at bar, once Robison was called upon to testify at trial, the trial court developed an understanding that despite the representations and arguments made during the motion in limine hearing, Hawker's admission to engaging in sexual intercourse with J.D. after he turned sixteen was relevant to Robison's determination that Hawker satisfied *951 the requirements for Jimmy Ryce Act civil commitment. Consequently, the trial court did not abuse its discretion by reversing its motion in limine ruling, as such was not carved in stone, based upon its full and mature understanding of the relevance of Hawker's admission to Robison's conclusion.
Turning to Hawker's second contention, we conclude that the trial court's reversal of its motion in limine ruling to allow the admission of Hawker's admission as a basis for Robison's conclusion did not result in a discovery violation. It is axiomatic that a trial court, by making a ruling, cannot commit a discovery violation; only a party can commit a discovery violation. See Nationwide Lift Trucks, Inc. v. Smith, 832 So.2d 824, 826 (Fla. 4th DCA 2002)(appropriateness of sanctions for discovery violation in civil case, specifically failure to preserve evidence, is measured by the "willfulness or bad faith of the responsible party" and the resulting prejudice)(emphasis added). Discovery violations relate to the conduct of parties in failing to disclose information relevant to a case, and not to evidentiary rulings of the trial court. The trial court's sole role in cases where discovery violations are alleged is a determination of whether they exist, whether they prejudiced the opposing party, and what redress is appropriate.
Even if it could be said that a trial court's reversal of an earlier ruling could result in a discovery violation, Hawker's contention that Robison's reference to Hawker's admission was such a violation would still be without merit. In conducting a discovery violation analysis in a civil case, the trial court should consider the prejudice suffered by the opposing party. See Nationwide, 832 So.2d at 826. In this case, Hawker asserts that he was surprised by Robison's testimony, thereby contending that he was prejudiced. However, the only "surprise" in this case was not that Robison employed Hawker's admission as the basis for his changed recommendation, but that the trial court allowed the admission into evidence at all where it had previously excluded it during the motion in limine hearing. In fact, Robison had consistently, from the time of the January 2004 report through his January 2005 trial testimony, employed Hawker's admission as the basis for his changed recommendation. Additionally, Robison had consistently stated the same rationale for the change based on Hawker's admission, that being a new understanding of Hawker's sexual circumstances where he continued to engage in sexual acts despite his advanced age, engaged in homosexual acts, and engaged in acts ranging beyond fondling to intercourse.[8]
Therefore, Hawker was not prejudiced in his ability to prepare for the trial based on a surprise caused by the State. To the contrary, Hawker knew for a year before the civil commitment trial that Robison changed his recommendation based on the admission, its impact on his sexual circumstances, and the resulting increase in his likelihood of re-offense. The State did nothing to prevent Hawker from being prepared to meet the admission at trial. Only the trial court caught Hawker off guard with its change in its motion in limine ruling. But it should have come as no surprise that a motion in limine ruling could be reversed where the facts and circumstances of the case as developed at trial demonstrated that Hawker's admission that he engaged in sexual intercourse with J.D. after he turned sixteen was relevant *952 to Robison's conclusion that he satisfied the requirements for Jimmy Ryce Act civil commitment. As such, we conclude that the trial court's reversed motion in limine ruling did not result in a discovery violation.
In sum, we conclude that Hawker's admission that he engaged in sexual intercourse with J.D. after he turned sixteen was properly admitted into evidence as the basis for Robison's changed recommendation. Despite Hawker's contentions to the contrary, the admission was relevant as it tended to prove his likelihood of re-offense for purposes of Jimmy Ryce Act civil commitment, so that the trial court did not abuse its discretion by reversing its motion in limine ruling excluding the admission. Additionally, the admission of Hawker's admission did not result in a discovery violation because any surprise caused by the changed motion in limine ruling did not result from the conduct of a party nor was Hawker prejudiced by the State where Robison had consistently stated the same basis and rationale for his changed recommendation that Hawker satisfied the requirements for Jimmy Ryce Act civil commitment. Therefore, we affirm.
Affirmed.
POLEN and HAZOURI, JJ., concur.
NOTES
[1] §§ 394.910, et seq., Fla. Stat.
[2] The trial court's 1997 probation order is not in our record on appeal. Relying on the trial court's rulings in the civil commitment transcript, it appears that the allegations of violation of probation involving J.D. were deemed unsubstantiated by the trial court at the 1997 probation hearing. Based on documents relevant to the 1997 probation hearing that are available in the record, it seems that J.D. (who was born in 1976) alleged that Hawker was sexually involved with him from 1985-1996 (or when J.D. was between nine and twenty years old). Overall, it appears that Hawker was found to have violated probation solely for being in the presence of C.C. who was under sixteen years old in 1997, an act which Hawker admitted.
[3] The State has never contended that this contact between Hawker and J.D. after he turned sixteen was a criminal offense and has referred to it as a legal and consensual relationship. However, it does not appear that this conclusion is totally accurate under Florida law. Florida Statutes section 794.05 criminalizes, as unlawful sexual activity, "oral, anal, or vaginal penetration by, or union with, the sexual organ of another" where the perpetrator is twenty-four years of age or older and the victim is sixteen or seventeen years of age. § 794.05(1), Fla. Stat. As such, sexual intercourse between the elderly Hawker and J.D. even after he turned sixteen and while he was seventeen would be unlawful under this section (although the relationship between Hawker and J.D. from the time J.D. was eighteen until he was twenty would not be unlawful and could be referred to as consensual). Section 794.05(2) creates an exception in cases where the disability of nonage has been removed, and it is not known from the record before us whether this was true of J.D. Additionally, section 794.05 was amended in 1996 during the timeline of events in this case, but it does not appear that this amendment has any impact under the facts of this case, as J.D. was twenty and outside the scope of the statute at the time of the amendment.
[4] Another expert, Gregory A. Prichard, Psy. D., likewise concluded that Hawker satisfied the requirements for civil commitment.
[5] It is uncontested that Hawker's defense counsel was timely provided with copies of all of Robison's reports.
[6] J.D. was never referred to by name in front of the jury.
[7] This belies Hawker's contention that Robison testified in his deposition that Hawker's admission to having engaged in sexual intercourse with J.D. after he turned sixteen was insignificant. As such, there was no change in Robison's testimony regarding the significance of the admission between the deposition and the trial. In both instances, Robison indicated that Hawker's admission was significant; at trial, Robison may have explained this significance in greater detail than during the deposition, because he was asked, but Hawker had the opportunity to explore the significance of his admission further at the deposition based on the rationale stated in Robison's December 2004 report and did not do so.
[8] However, it is worth noting that Robison would have been permitted to testify to his opinion and his reason for changing his opinion, Hawker's admission, without explaining the underlying rationale for the change unless questioned regarding such on cross-examination under Florida Statutes section 90.705(1).