# Supreme Court of Florida

_____

No. SC13-2336
_____

**GARY G. DEBAUN,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[March 16, 2017]

CANADY, J.

In this case we consider whether the term "sexual intercourse" as used in the context of a statutory scheme enacted to prevent the spread of sexually transmissible diseases encompasses conduct beyond penile-vaginal intercourse. We have for review State v. Debaun, 129 So. 3d 1089, 1095 (Fla. 3d DCA 2013), in which the Third District Court of Appeal held that the term "sexual intercourse" as used in section 384.24(2), Florida Statutes (2011), encompasses conduct beyond penile-vaginal intercourse, including oral and anal intercourse between two men. The Third District certified that its decision is in direct conflict with L.A.P. v. State, 62 So. 3d 693, 694-95 (Fla. 2d DCA 2011), in which the Second District

held that the term "sexual intercourse" as used in section 384.24(2) applies only to "the penetration of the female sex organ by the male sex organ." We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. Because we conclude that the term "sexual intercourse" in section 384.24(2) encompasses conduct beyond penile-vaginal intercourse, we approve the decision of the Third District in Debaun and disapprove the decision of the Second District in L.A.P.

## I. BACKGROUND

In 2011, Gary G. Debaun was charged with violating section 384.24(2), Florida Statutes (2011), which provides:

> It is unlawful for any person who has human immunodeficiency virus infection, when such person knows he or she is infected with this disease and when such person has been informed that he or she may communicate this disease to another person through sexual intercourse, to have sexual intercourse with any other person, unless such other person has been informed of the presence of the sexually transmissible disease and has consented to the sexual intercourse.

The charge arose from a homosexual relationship between Debaun and the victim, C.M. Debaun, 129 So. 3d at 1090. Before engaging in sexual activity with Debaun, C.M. requested that Debaun provide him with a laboratory report confirming that Debaun was not infected with human immunodeficiency virus (HIV). Id. Debaun obliged and provided C.M. with a lab report indicating that he was HIV negative. Id. But after engaging in oral and anal intercourse with Debaun, C.M. learned that Debaun had forged his doctor's signature on the lab

report and was in fact HIV positive.  Id.  C.M. reported the crime and assisted law enforcement in obtaining admissions from Debaun during a controlled phone call. Debaun was subsequently charged with violating section 384.24(2), a third-degree felony.[1]

Debaun moved to dismiss the charge under Florida Rule of Criminal Procedure 3.190(c)(4), arguing that the term "sexual intercourse," which is not defined in chapter 384, applies only to penetration of the female sex organ by the male sex organ.  Id. at 1091.  The trial court granted Debaun's motion to dismiss based on the decision of the Second District in L.A.P., 62 So. 3d at 694-95, which held that the term "sexual intercourse" in section 384.24(2) applies only to penile-vaginal intercourse between a male and a female.  Id.  The State appealed.  Id.

On appeal, the Third District rejected the holding of L.A.P. and concluded that the "meaning of the term 'sexual intercourse' as used in section 384.24(2) includes more than an act where a male's penis is placed inside a female's vagina, and encompasses the oral and anal sexual activity" in which Debaun engaged with the victim.  Id. at 1095.  The court reversed the order dismissing the charge against Debaun and certified conflict with L.A.P.  Id.

---

1. See § 384.34(5), Fla. Stat. (2011) ("Any person who violates s. 384.24(2) commits a felony of the third degree . . . .  Any person who commits multiple violations of s. 384.24(2) commits a felony of the first degree . . . .").

In reaching its conclusion that section 384.24(2) applied to conduct beyond penile-vaginal intercourse, the Third District ascertained the plain and ordinary meaning of "sexual intercourse" from an edition of Webster's Third New International Dictionary that was published the same year that section 384.24(2) was enacted, defining "sexual intercourse" as either "heterosexual intercourse involving penetration of the vagina by the penis" or "intercourse involving genital contact between individuals other than penetration of the vagina by the penis." Id. at 1091 (citing Webster's Third New International Dictionary 2082 (1986)). Having determined that "the plain and ordinary meaning of the term 'sexual intercourse' as used in section 384.24(2) includes more than an act where a male's penis is placed inside a female's vagina" and recognizing that it would thwart legislative intent to interpret the statute as prohibiting only penetration of the vagina by the penis, the court concluded that Debaun "engaged in acts which fall within the plain and ordinary meaning of the term 'sexual intercourse' as used in section 384.24(2)." Id. at 1091-92.

The Third District found support for its conclusion within the legislative history of chapter 384. Prior to the enactment of the Control of Sexually Transmissible Disease Act in 1986, chapter 384 was known as the Venereal Diseases Act. Id. at 1093. Under the Venereal Diseases Act, it was "unlawful for any female afflicted with any venereal disease, knowing of such condition, to have

sexual intercourse with any male person, or for any male person afflicted with any venereal disease, knowing of such condition, to have sexual intercourse with any female." § 384.02, Fla. Stat. (1985), repealed by ch. 86-220, § 91, Laws of Fla. In 1986, when the Venereal Diseases Act was repealed and replaced by the Control of Sexually Transmissible Disease Act, and section 384.02 was replaced by section 384.24, the application of the Act was expanded from only sexual intercourse between "any female . . . with any male person" and "any male person . . . with any female" to sexual intercourse between "any person . . . with any other person." Compare § 384.02, Fla. Stat. (1985), with § 384.24, Fla. Stat. (1986). The Third District concluded that these changes to the statutory scheme in chapter 384 evinced the Legislature's intent to expand the definition of "sexual intercourse" beyond conduct involving only a man and a woman. Debaun, 129 So. 3d at 1094.

In L.A.P., which was decided two years before Debaun, the Second District concluded "that sexual intercourse is an unambiguous phrase which must be given its plain meaning in the absence of a definition in chapter 384." 62 So. 3d at 694. In order to ascertain the plain meaning of the term, the court relied on the definition of "sexual intercourse" provided in section 826.04, Florida Statutes, which prohibits incest. The incest statute defines "sexual intercourse" as "the penetration of the female sex organ by the male sex organ . . . ." Id. (alteration in original) (quoting § 826.04, Fla. Stat. (2008)). Based on this definition, the Second

District concluded that the Legislature's use of the term "sexual intercourse within section 384.24(2) is clear[ly] and unambiguous[ly]" limited to heterosexual penile-vaginal intercourse, and therefore "the statute d[id] not apply to [L.A.P.'s] actions"—"engaging in oral sex and digital penetration of the vagina without informing her partner of her HIV positive status." Id. at 694-95.

During the pendency of Debaun's appeal, the Fifth District also considered the scope of the term "sexual intercourse" in section 384.24(2). See State v. D.C., 114 So. 3d 440 (Fla. 5th DCA), review dismissed, 123 So. 3d 557 (Fla. 2013) (table). Like Debaun, the defendant in D.C. was charged with violating section 384.24(2) after engaging in oral and anal intercourse with another man without first disclosing that he was HIV positive. Id. at 441. D.C. moved to dismiss the charge, "contending that sexual intercourse, as that term is used in section 384.24(2), takes place only when the female sex organ is penetrated by the male sex organ and, therefore, the statute did not apply to [his] alleged conduct, which involved homosexual oral and anal sex" between two men. Id. The trial court granted the motion and dismissed the charge based on the Second District's earlier decision in L.A.P., and the State appealed. Id. at 440-41, 443.

On appeal, the Fifth District sought to "determine the plain and obvious meaning of [the] statute's text by referring to dictionaries." Id. at 442. After reciting a number of definitions from various dictionaries, the court noted that none

of the definitions uncovered by the court or cited by D.C. limited "sexual intercourse" to "heterosexual vaginal intercourse." Id. The Fifth District therefore concluded that "the plain and ordinary meaning of the term sexual intercourse, as used in section 384.24(2), includes vaginal, anal, and oral intercourse between persons, regardless of their gender." Id. The court stated that limiting the meaning of "sexual intercourse" in the statute to penile-vaginal intercourse "would lead to 'a result clearly contrary to legislative intent.' " Id. (quoting State v. Burris, 875 So. 2d 408, 410 (Fla. 2004)). In reversing the trial court's order dismissing the information, the Fifth District also certified conflict with the Second District's decision in L.A.P.[2] Id. at 443.

## II. ANALYSIS

In the analysis that follows, we first consider the plain and ordinary meaning of the term "sexual intercourse" and conclude that it is not limited to only penile-vaginal intercourse. We then conclude that the plain and ordinary meaning of "sexual intercourse" controls in section 384.24(2) because it effectuates the legislative intent of the statute. Lastly, in light of the plain and ordinary meaning and the legislative intent, we explain why the definitions of "sexual intercourse"

---

2. D.C. sought review of the decision in this Court based on the certified conflict with L.A.P., but because he failed to timely file his notice to invoke this Court's jurisdiction, the case was dismissed. D.C. v. State, 123 So. 3d 557 (Fla. 2013) (table).

provided in the incest statute and referenced in the case law cited in <u>L.A.P.</u> are not applicable to section 384.24(2).

The narrow issue before the Court is whether the term "sexual intercourse" as used in section 384.24(2) is limited to conduct involving the penetration of the female sex organ by the male sex organ or whether it encompasses conduct beyond penile-vaginal intercourse. This presents a question of statutory interpretation, which is subject to de novo review. <u>Anucinski v. State</u>, 148 So. 3d 106, 108 (Fla. 2014).

With regard to questions of statutory interpretation, we have stated:

Our purpose in construing a statute is to give effect to the Legislature's intent. When a statute is clear, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent. Instead, the statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent.

<u>Paul v. State</u>, 129 So. 3d 1058, 1064 (Fla. 2013) (quoting <u>Burris</u>, 875 So. 2d at 410). "Where, as here, the [L]egislature has not defined the words used in a [statute], the language should be given its plain and ordinary meaning." <u>Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Sch., Inc.</u>, 3 So. 3d 1220, 1233 (Fla. 2009) (second alteration in original) (quoting <u>Fla. Birth-Related Neurological Injury Comp. Ass'n v. Fla. Div. of Admin. Hearings</u>, 686 So. 2d 1349, 1354 (Fla. 1997)). "When considering the [plain] meaning of terms used in a statute, this Court looks first to the terms' ordinary definitions[, which] . . . may be derived

- 8 -

from dictionaries." Dudley v. State, 139 So. 3d 273, 279 (Fla. 2014) (second and third alterations in original) (quoting Trinidad v. Fla. Peninsula Ins. Co., 121 So. 3d 433, 439 (Fla. 2013)); see also E.A.R. v. State, 4 So. 3d 614, 632 (Fla. 2009); Barco v. Sch. Bd. of Pinellas Cnty., 975 So. 2d 1116, 1122 (Fla. 2008). Because the Legislature did not define "sexual intercourse" in chapter 384, we look to the dictionary in order to ascertain the plain and ordinary meaning of the term.

Webster's Third New International Dictionary defines "sexual intercourse" as both "heterosexual intercourse involving penetration of the vagina by the penis" and "intercourse involving genital contact between individuals other than penetration of the vagina by the penis." Webster's Third New International Dictionary 2082 (1993). The American Heritage Dictionary defines "sexual intercourse" as "[s]exual union between a male and a female involving insertion of the penis into the vagina" and "[s]exual activity that includes insertion of the penis into the anus or mouth." The American Heritage Dictionary of the English Language 1606 (5th ed. 2011). Merriam-Webster's Collegiate Dictionary defines "intercourse" as "physical sexual contact between individuals that involves the genitalia of at least one person." Merriam-Webster's Collegiate Dictionary 652 (11th ed. 2014). Thus, the plain meaning of "sexual intercourse" clearly encompass acts beyond penile-vaginal intercourse. Because this Court must apply the plain meaning of the term unless doing so would render an absurd result or a

result clearly contrary to legislative intent, we turn next to a discussion of the legislative intent behind the statute.

Chapter 384 is known as the "Control of Sexually Transmissible Disease Act." § 384.21, Fla. Stat. (2011). It is contained within Title XXIX of the Florida Statutes, which is titled "Public Health." Section 384.22 explicitly sets forth the legislative intent and purpose of the Act as follows:

> The Legislature finds and declares that sexually transmissible diseases constitute a serious and sometimes fatal threat to the public and individual health and welfare of the people of the state and to visitors to the state. The Legislature finds that the incidence of sexually transmissible diseases is rising at an alarming rate and that these diseases result in significant social, health, and economic costs, including infant and maternal mortality, temporary and lifelong disability, and premature death. The Legislature finds that sexually transmissible diseases, by their nature, involve sensitive issues of privacy, and it is the intent of the Legislature that all programs designed to deal with these diseases afford patients privacy, confidentiality, and dignity. The Legislature finds that medical knowledge and information about sexually transmissible diseases are rapidly changing. The Legislature intends to provide a program that is sufficiently flexible to meet emerging needs, deals efficiently and effectively with reducing the incidence of sexually transmissible diseases, and provides patients with a secure knowledge that information they provide will remain private and confidential.

§ 384.22, Fla. Stat. (2011) (emphasis added). Within the Act, section 384.24(2) seeks to further the Legislature's intent to reduce the incidence of sexually transmissible diseases by making it unlawful for any person with HIV to knowingly expose another person to HIV through sexual intercourse without

- 10 -

informing the other person of the presence of the disease and obtaining that person's consent to the intercourse and exposure to the disease.

According to the CDC, HIV can be spread through vaginal, anal, and oral sex, but anal sex presents the greatest risk of transmitting the infection. Centers for Disease Control and Prevention, HIV Transmission, http://www.cdc.gov/hiv/basics/transmission.html (last visited March 1, 2017). Further, although gay, bisexual, and other men who have sex with men represent only about 2% of the United States population, they are the population most severely affected by HIV. Centers for Disease Control and Prevention, Fact Sheet: HIV Among Gay and Bisexual Men (Sept. 2016), http://www.cdc.gov/hiv/pdf/group/msm/cdc-hiv-msm.pdf. In 2014, gay and bisexual men accounted for the majority (67%) of new HIV infections, as well as the majority of all people (55%) living with HIV in the United States as of 2013. Id.

When the plain meaning of the term "sexual intercourse"—which includes oral and anal intercourse between two men—is applied to section 384.24(2), the statute acts to prohibit HIV-positive individuals from engaging in the sexual acts that are most likely to transmit the infection to a sexual partner without informing the partner of the presence of the infection and obtaining the partner's consent to the intercourse despite the presence of the infection. This is a reasonable result,

which gives full effect to the Legislature's intent to reduce the incidence of HIV. Thus, the plain meaning of the term controls in section 384.24(2).

Lastly, we explain why although "[i]n the absence of a statutory definition, it is permissible to look to case law or related statutory provisions that define the term," L.A.P., 62 So. 3d at 694 (alteration in original) (quoting State v. Brake, 796 So. 2d 522, 528 (Fla. 2001)), the definitions of "sexual intercourse" provided in the incest statute and referenced in the cases cited by the Second District in L.A.P. are not applicable to section 384.24(2).

First, when a court looks to other statutory provisions to define a term that lacks its own statutory definition, the provision to which a court looks must be related to the provision lacking a definition. "[T]he incest statute addresses 'the violation of generally accepted societal standards involving marriage and sexual intercourse between persons related within the specified degrees. Society's interests in prohibiting incest include the prevention of pregnancies which may involve a high risk of abnormal or defective offspring.' " Beam v. State, 1 So. 3d 331, 334 (Fla. 5th DCA 2009) (quoting Slaughter v. State, 538 So. 2d 509, 512 (Fla. 1st DCA 1989)); see also Carnes v. State, 725 So. 2d 417, 418 (Fla. 2d DCA 1999) ("The obvious purpose of the incest statute is to address the evil of sexual intercourse between persons who are related to each other within specific degrees."). Section 384.24(2), which is located in a different chapter and under a

- 12 -

different title than the incest statute, addresses a separate evil and is not related to the incest statute.

Second, application of the definition of "sexual intercourse" provided in the incest statute ("penetration of the female sex organ by the male sex organ") to section 384.24(2) would fail to give full effect to the statute and the legislative intent of chapter 384 by excluding from the statute's ambit both the type of sexual intercourse with the highest risk of communicating HIV and the category of individuals accounting for the majority of existing and new HIV infections. Application of such a limited definition would exempt from prosecution HIV-positive individuals who knowingly expose their unwitting partners to HIV by engaging in penile-anal or penile-oral intercourse. HIV-positive individuals could engage in homosexual activity with impunity while those engaging in heterosexual activity would need only avoid penile-vaginal intercourse in order to circumvent the law. Nothing in the statutory text or context indicates that the Legislature intended to reduce the incidence of HIV only among those who partake exclusively in heterosexual penile-vaginal intercourse while allowing the incidence of HIV to continue to "ris[e] at an alarming rate," section 384.22, Florida Statutes, among those engaging in penile-anal or penile-oral intercourse with a member of the same or opposite sex. Such incongruous results would vitiate the intent of the Legislature to curtail the spread of HIV.

Because the incest statute is directed at the prevention of certain pregnancies there is no reason for the term "sexual intercourse" as used in that statute to encompass any act beyond penile-vaginal intercourse.  But as used in a statute directed at curtailing the spread of HIV—which can be communicated through vaginal, anal, and oral intercourse, and is in fact most likely to be spread through anal intercourse—it would be absurd for the term "sexual intercourse" to apply only to the act of heterosexual penile-vaginal intercourse.  If the Legislature intended to exclude from section 384.24(2) knowing and unconsented exposure to HIV through oral or anal sexual intercourse, it could have provided a specific and limited definition of "sexual intercourse," just as it did in the incest statute.

In addition to the incest statute, the Second District in L.A.P. relied on four cases in support of its conclusion that the definition of "sexual intercourse" provided in the incest statute limits the use of the term in section 384.24(2) to penile-vaginal intercourse.  One of those cases, Green v. State, 765 So. 2d 910 (Fla. 2d DCA 2000), did not define "sexual intercourse."  Two of those cases, State v. Bowden, 18 So. 2d 478 (Fla. 1944), and Williams v. State, 109 So. 305 (Fla. 1926), considered the definition of the term as applied to the obsolete crime of carnal intercourse with an unmarried female of previous chaste character under the age of eighteen years.  And the fourth case, Lanier v. State, 443 So. 2d 178 (Fla. 3d DCA 1983), decision quashed, 464 So. 2d 1192 (Fla. 1985), merely relied on the

definition in <u>Williams</u>.  None of those cases compel us to impose a limitation on the application of section 384.24(2) to only penile-vaginal intercourse.  Further, the Second District ignored more recent case law in which the term "sexual intercourse" was used to describe homosexual conduct.  <u>E.g.</u>, <u>Hawker v. State</u>, 951 So. 2d 945 (Fla. 4th DCA 2007) (using the term "sexual intercourse" throughout the opinion to refer to conduct between two males); <u>Grohs v. State</u>, 944 So. 2d 450, 457 (Fla. 4th DCA 2006) (referring to "sexual intercourse" involving two males).

Finally, we reject the suggestion that the rule of lenity in section 775.021(1), Florida Statutes, requires that we adopt the restricted definition of "sexual intercourse" urged by Debaun.  The rule "that criminal statutes must be strictly construed does not require that the words of an enactment be given their narrowest meaning or that the lawmaker's evident intent be disregarded."  <u>United States v. Giles</u>, 300 U.S. 41, 48 (1937) (citing <u>United States v. Corbett</u>, 215 U.S. 233, 242 (1909)).  The term "sexual intercourse" is commonly understood to broadly refer to various sexual acts—including the sexual act at issue here.  In certain contexts, the term refers specifically—that is, more narrowly—to penile-vaginal intercourse. But in the context of section 384.24(2), "sexual intercourse" unambiguously denotes sexual conduct that includes acts of oral and anal intercourse.

### III.  CONCLUSION

The term "sexual intercourse" in section 384.24(2) encompasses conduct beyond heterosexual penile-vaginal intercourse. We therefore approve the Third District's decision in Debaun and disapprove the Second District's decision in L.A.P. to the extent that it conflicts with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, and POLSTON, JJ., concur.
LAWSON, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Third District - Case No. 3D11-3094

(Monroe County)

Carlos J. Martinez, Public Defender, and Brian Lee Ellison, Assistant Public Defender, Eleventh Judicial Circuit, Miami, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Richard L. Polin, Bureau Chief, and Joanne Diez and Jeffrey R. Geldens, Assistant Attorneys General, Miami, Florida,

for Respondent