# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-248
_____

INTERNATIONAL ACADEMY OF
DESIGN, INC. and
INTERNATIONAL ACADEMY OF
MERCHANDISING AND DESIGN,
INC.,

    Appellants,

    v.

DEPARTMENT OF REVENUE,

    Appellee.

_____

On appeal from a Final Order of the Department of Revenue.
Andrea Moreland, Deputy Executive Director.

December 31, 2018


KETCHEL, TERRANCE R., Associate Judge.

The International Academy of Design, Inc. and The International Academy of Merchandising and Design, Inc. challenge a final order of the Department of Revenue determining that they were not eligible for tax exemptions from 2010 to 2013 under section 212.0602, Florida Statutes (2010). For the reasons set forth below, we affirm the final order of the Department of Revenue.

The tax exemption at issue here involves the interpretation of and interplay between section 212.0602, Florida Statutes and section 212.031(1)(a)9., Florida Statutes. Section 212.0602 provides certain tax exemptions for "any entity, institution, or organization that is primarily engaged in teaching students to perform any of the activities or services *described* in s. 212.031(1)(a)9."[1] § 212.0602, Fla. Stat. (emphasis added). Section 212.031(1)(a)9. provides a separate tax exemption for "[p]roperty used as an integral part of the performance of qualified production services," and goes on to define "qualified production services" as

> any activity or service performed directly in connection with the production of a qualified motion picture, as defined in s. 212.06(1)(b), and includes:
>
> a. Photography, sound and recording, casting, location managing and scouting, shooting, creation of special and optical effects, animation, adaptation (language, media, electronic, or otherwise), technological modifications, computer graphics, set and stage support (such as electricians, lighting designers and operators, greensmen, prop managers and assistants, and grips), wardrobe (design, preparation, and management), hair and makeup (design, production, and application), performing (such as acting, dancing, and playing), designing and executing stunts, coaching, consulting, writing, scoring, composing, choreographing, script supervising, directing, producing, transmitting dailies, dubbing, mixing, editing, cutting, looping, printing, processing, duplicating, storing, and distributing;
>
> b. The design, planning, engineering, construction, alteration, repair, and maintenance of real or personal property including stages, sets, props, models, paintings, and facilities principally required for the performance of those services listed in sub-subparagraph a.; and

---

[1] The statute also has three other conditions, but they are not at issue in this case.

c. Property management services directly related to property used in connection with the services described in sub-subparagraphs a. and b.

§ 212.031(1)(a)9., Fla. Stat. A "qualified motion picture" is defined in section 212.06(1)(b) as

> all or any part of a series of related images, either on film, tape, or other embodiment, including, but not limited to, all items comprising part of the original work and film-related products derived therefrom as well as duplicates and prints thereof and all sound recordings created to accompany a motion picture, which is produced, adapted, or altered for exploitation in, on, or through any medium or device and at any location, primarily for entertainment, commercial, industrial, or educational purposes.

§ 212.06(1)(b), Fla. Stat.

When interpreting a statute, the polestar is legislative intent, *Bautista v. State*, 863 So. 2d 1180, 1185 (Fla. 2003), and the primary indicator of the legislature's intent is the text of the statute, *Rollins v. Pizzarelli*, 761 So. 2d 294, 297 (Fla. 2000). That is to say, "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction." *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (quoting *A.R. Douglass, Inc. v. McRainey*, 137 So. 157, 159 (Fla. 1931)). "When considering the [plain] meaning of terms used in a statute, this Court looks first to the terms' ordinary definitions[, which] . . . may be derived from dictionaries." *Debaun v. State*, 213 So. 3d 747, 751 (Fla. 2017) (quoting *Dudley v. State*, 139 So. 3d 273, 279 (Fla. 2014)). Ambiguity exists where reasonable people can find different meanings in the same language. *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992).

The term "describe" as used in the statute can mean either "list" or "define." *See Describe*, Webster's Third New Int'l Dictionary (1971) ("to represent by words written or spoken for the knowledge or understanding of others"); *Describe*, The Oxford

English Dictionary (2d ed. 1989) ("1. To write down, set forth in writing or in written words . . . . 2. To set forth in words, written or spoken, by reference to qualities, recognizable features, or characteristic marks; to give a detailed or graphic account of."); *Describe*, The American Heritage Dictionary of the English Language (1982) ("To give a verbal account of; tell about in detail."). In other words, the definition of "describe" is broad enough to encompass both parties' interpretations.

The Academies argue that when section 212.0602 refers to those activities described in section 212.031(1)(a)9., it is referring *only* to the list of activities in sub-subparagraphs a. and b. So Appellants see the word "describe" as being synonymous with "list."

The Department argues that when section 212.0602 refers to those activities described in section 212.031(1)(a)9., it is referring to all those activities listed in sub-subparagraphs a. and b. that are "performed directly in connection with the production of a qualified motion picture." § 212.031(1)(a)9., Fla. Stat. In other words, it sees the word "describe" as being synonymous with "define." Accordingly, section 212.0602 refers to those activities and services *defined* in section 212.031(1)(a)9., not just *listed* therein. Therefore, the Department argues that the statute does not provide a tax exemption for an educational institution that is only primarily engaged in teaching students photography, sound and recording, creation of special effects, animation, wardrobe design, hair and makeup, writing, scoring, composing, etc. *See* § 212.031(1)(a)9.a., Fla. Stat. It further requires that the institution teach students to perform any of those activities or services "directly in connection with the production of a qualified motion picture." § 212.031(1)(a)9., Fla. Stat.

We find that both parties have presented us with reasonable interpretations of the statute. At this point, we would normally turn to the canons of statutory construction to wade through this ambiguity; however, two principles of law compel us to affirm the Department's interpretation.

4

First, an administrative agency's interpretation of a statute that it is tasked with enforcing is entitled great deference.[2] *See Fla. Hosp. v. Agency for Health Care Admin.*, 823 So. 2d 844, 847 (Fla. 1st DCA 2002); *Sans Souci v. Div. of Fla. Land Sales & Condos., Dep't of Bus. Reg.*, 421 So. 2d 623, 626 (Fla. 1st DCA 1982) (giving deference to the Division's interpretation of a condominium statute because it has "special expertise" in that subject area). Said differently, "if the agency's interpretation is one of several permissible interpretations, it must be upheld despite the existence of reasonable alternatives." *Doyle v. Dep't of Bus. Reg.*, 794 So. 2d 686, 690 (Fla. 1st DCA 2001).

Second, statutes providing exemptions from a general tax are strictly construed against the tax payer.[3] *State Dep't of Rev. v. Anderson*, 403 So. 2d 397, 399 (Fla. 1981). Because tax exemptions are strictly construed against the tax payer, we must utilize the Department's definition of "describe" as synonymous with "define." Therefore, the Academies must prove that their students performed certain activities and services directly in connection with the production of a qualified motion picture.

The Academies alternatively argued that they satisfied the requirement because their students created portfolios throughout their degree program that constituted a qualified motion picture. The facts do not support the Academies' position here. A qualified motion picture is a series of related images and the related sound recordings that constitute all or part of an original work created primarily for entertainment, commercial, industrial, or educational purposes. § 212.06(1)(b), Fla. Stat. Some of the

---

[2] Florida voters recently passed an amendment to the Florida Constitution that will soon prevent us from deferring to agency interpretations of statutes. Art. V, § 21, Fla. Const. (effective January 8, 2019), *printed in* Fla. Dep't of State, *Proposed Constitutional Amendments and Revisions for the 2018 Gen. Election* 19, https://dos.myflorida.com/media/699824/constitutional-amendments-2018-general-election-english.pdf.

[3] This rule will not be abrogated by the recently passed constitutional amendment and is an independent basis for our ruling.

5

Academies' students may have produced portfolios that would qualify as a motion picture under the statute, but it is impossible to determine from the record what percentage of students were producing portfolios that would qualify because the ALJ did not break down the programs of study by percentage. We do not know what percentage of the Academies' students created an animation program or a movie score; therefore, there is insufficient evidence to determine that the Academies were "primarily engaged" in teaching students to perform certain tasks "directly in connection with the production of a qualified motion picture."

To conclude, the Department's interpretation of section 212.0602 is reasonable, and we must affirm based on two principles of law. One, we owe great deference to an agency's interpretation of a statute it has been tasked with administering. Two, we must strictly construe any tax exemption against the tax payer. For these two reasons, we affirm the Department's final order determining that the appellants were not entitled to the tax exemption.

B.L. THOMAS, C.J., concurs; WINOKUR, J., specially concurs with opinion.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

WINOKUR, J., specially concurring.

I agree with the majority that interpretation of section 212.0602, Florida Statutes, employed by the Department in this case is proper and compels affirmance.

I question whether we should, in making this determination, rely on the maxim that "statutes providing exemptions from a general tax are strictly construed against the tax payer." Maj. op. at 5. I see no compelling reason to employ an interpretative rule for this type of statute that does not apply to any different statute, and that in practice obligates a court interpreting such exemption

6

to rule against the taxpayer. I agree with the observations of Judge Griffin of the United States Court of Appeals for the Sixth Circuit:

> [T]he statute at issue, like all statutes, should not be construed "broadly," "narrowly," "strictly," or "liberally," but rather fairly and reasonably. . . . "[A] text should not be construed strictly, and it should not be construed leniently; it should be construed reasonably, to contain all that it fairly means."

*Appoloni v. United States*, 450 F. 3d 185, 200 (6th Cir. 2006) (Griffin, J., concurring in part and dissenting in part) (quoting Antonin Scalia, *A Matter of Interpretation: Federal Courts and The Law* 23 (1997)). *See also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 362 (2012) ("Like any other governmental intrusion on property or personal freedom, a tax statute should be given its fair meaning, and this includes a fair interpretation of any exceptions it contains. . . . [T]he terms of the exception [to a tax statute] ought to be reasonably, rather than strictly, construed.").

Nonetheless, as stated, even without resort to this statutory-construction maxim, I believe the order below should be affirmed and concur in the majority opinion to do so.

––––––––––––––––––––––––––

Jonathan W. Taylor, Joseph C. Moffa, Gerald J. Donnini, James F. McAuley, and James H. Sutton, Jr., of Moffa, Sutton & Donnini, P.A., Fort Lauderdale, for Appellants.

Pamela Jo Bondi, Attorney General, Amit Agarwal, Solicitor General, Edward M. Wenger, Chief Deputy Solicitor General, and Christopher J. Baum, Deputy Solicitor General, Tallahassee, for Appellee.