DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

————————————————

TAMARA JEANETTE CADET,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2025-0761

————————————————

June 10, 2026

Appeal from the Circuit Court for Manatee County; Stephen Mathew Whyte, Judge.

Richard C. Reinhart, Bradenton, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Analise V. Walker, Assistant Attorney General, Tampa, for Appellee.

ROTHSTEIN-YOUAKIM, Judge.

In 2019, a police officer noticed Tamara Jeanette Cadet driving with an illuminated blue "Uber" sign on her dashboard and pulled her over for violating section 316.2397, Florida Statutes (2019). A subsequent search of her car (based on an officer's smelling of marijuana) revealed fentanyl and cocaine in the center console.

Cadet pled no contest to trafficking in fentanyl and possessing cocaine with intent to sell and was sentenced to eight years in prison. On appeal, she challenges the trial court's denial of her dispositive

motion to suppress evidence, arguing that officers lacked probable cause for the traffic stop and then also unduly prolonged it.  We affirm in all respects and, as to the latter argument, without discussion.  We write to emphasize, however, that an Uber driver is not excepted from the prohibitions of section 316.2397.

Section 316.2397 restricts the use of certain lights on vehicles, in pertinent part, as follows:

(1)  A person may not drive . . . any vehicle . . . upon any highway within this state with any lamp or device thereon showing or displaying a red, red and white, or blue light visible from directly in front thereof except for certain vehicles provided in this section.

(2)  It is expressly prohibited for any vehicle or equipment, except police vehicles, to show or display blue lights. However, vehicles owned, operated, or leased by the Department of Corrections or any county correctional agency may show or display blue lights when responding to emergencies.

Although the statute also includes exceptions to the restrictions on the show or display of certain colors of light, none of those exceptions apply to the restrictions on blue lights.  *See, e.g.*, § 316.2397(3).

At the suppression hearing, Cadet argued that her illuminated blue Uber sign did not qualify as a "lamp," "device," or "light" because it was not part of the vehicle and did not illuminate something else and that section 316.2397 did not reflect a clear legislative intent to preclude ride-share drivers from using illuminated blue signs to identify their company (and thereby foster rider safety).  The State countered that her illuminated sign was plainly a "device" and, further, that subsection (2) reflects a "clear legislative intent," i.e., "We don't want blue lights on cars, period."

In denying Cadet's motion, the trial court agreed with the State that her sign was a "device that was showing or displaying a blue light." The court found that the light was visible from directly in front of the vehicle, as prohibited under subsection (1), but observed that, regardless, subsection (2) more broadly and "expressly prohibit[s] . . . any vehicle, except police vehicles, to show or display blue lights."

A trial court's ruling on a motion to suppress evidence involves a mixed question of law and fact. *E.B. v. State*, 866 So. 2d 200, 202 (Fla. 2d DCA 2004). We review the court's factual findings for competent substantial evidence and its application of the law de novo. *Id.*

An officer may initiate a traffic stop if the officer has "an objectively reasonable basis for making the stop." *State v. Boston*, 267 So. 3d 463, 465 (Fla. 2d DCA 2019) (quoting *Dobrin v. Fla. Dep't of Highway Safety & Motor Vehicles*, 874 So. 2d 1171, 1174 (Fla. 2004)). In "applying the objective test, generally the only determination to be made is whether probable cause existed for the stop in question." *Holland v. State*, 696 So. 2d 757, 759 (Fla. 1997). We have no difficulty concluding that the illuminated Uber sign here was a "device" showing or displaying blue light that was visible directly in front of the vehicle, supplying the officer with probable cause to pull Cadet over.

"When we construe statutes, 'our first (and often only) step . . . is to ask what the Legislature actually said in the statute, based upon the common meaning of the words used' when the statute was enacted." *Tsuji v. Fleet*, 366 So. 3d 1020, 1025 (Fla. 2023) (quoting *Shepard v. State*, 259 So. 3d 701, 705 (Fla. 2018)). Because "lamp" and "device" are not defined in the statute, we turn initially to the dictionary. *See Somers v. United States*, 355 So. 3d 887, 891 (Fla. 2022) ("When considering the [plain] meaning of terms used in a statute, this Court looks first to the

terms' ordinary definitions[, which] . . . may be derived from dictionaries." (alterations in original) (quoting *Debaun v. State*, 213 So. 3d 747, 751 (Fla. 2017))).  We note that neither of these terms has undergone any discernable "meaning shift" since section 316.2397 (then numbered differently) first became law in 1971.[1]  "Lamp" means "any of various devices for producing light or sometimes heat."  *See Lamp*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/lamp (last visited Apr. 27, 2026).  "Device" means "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function."  *See Device*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/device (last visited Apr. 27, 2026).

Of course, statutory interpretation is not simply about defining disembodied words.  Context matters, as "sound interpretation requires paying attention to the whole law."  *Richman v. Calzaretta*, 338 So. 3d 1081, 1082 (Fla. 5th DCA 2022) (quoting *State v. McKenzie*, 331 So. 3d 666, 671 (Fla. 2021)); *see also Hechtman v. Nations Title Ins. of N.Y.*, 840 So. 2d 993, 996 (Fla. 2003) (reminding us that "significance and effect must be given to every word, phrase, sentence, and part of the statute if possible").  Here, an illuminated Uber sign—even if not a "device for producing light" (i.e., a "lamp")—is certainly a "device."  That is, it is a "piece of equipment" with "a special purpose," whether that purpose be advertising, driver identification, or what have you.  Although the bulk of

---

[1] Indeed, as far as we can tell, the definition of "lamp" hasn't changed much since the electric light bulb started replacing oil wicks as a source of illumination.  *Cf. Lamp*, An American Dictionary of the English Language, https://webstersdictionary1828.com/Dictionary/Lamp (last visited Apr. 27, 2026) ("A vessel for containing oil to be burned by means of a wick . . . .").

Cadet's argument on appeal is devoted to why her sign did not qualify as a "lamp," the statute, with the broader term "device," captures equipment that, regardless of its principal purpose, "shows" or "displays" blue light that is visible directly in front of the vehicle. An illuminated blue Uber sign does just that.

Having concluded that the statute says what it says and that Cadet's sign falls squarely within its purview, we end our analysis here. *See Tsuji*, 366 So. 3d at 1031 ("Given the clarity with which the Legislature spoke, this is a case in which our analysis begins and ends with the statutory language."). It is not our place to presume a particular legislative purpose behind section 316.2397, let alone to presume that we can effectuate that purpose "better" by excluding certain blue lights from that section notwithstanding its unambiguous statutory language. Rather, we gather the "purpose of the text . . . from the text itself, consistently with the other aspects of context." *Mercury Indem. Co. of Am. v. Cent. Fla. Med. & Chiropractic Ctr., Inc.*, 380 So. 3d 477, 481 (Fla. 5th DCA 2023) (emphasis omitted) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 33 (2012)).[2] Here, the text shows that the legislature effectively reserved to certain types of vehicles the use of blue light that is visible directly in front of them. Although the legislature could not have known in 1971 how future ride-sharing companies might advertise and facilitate interaction between their drivers and riders, this lack of clairvoyance does not render its decisions on matters of public policy any less due our respect. *See*

---

[2] Thus, that the legislature elsewhere focuses on flashing or rotating blue lights, *see* § 843.081(2), Fla. Stat. (2019), is beside the point; through section 316.2397, the legislature has addressed even stationary blue lights.

*Buechel v. Shim*, 340 So. 3d 507, 511 (Fla. 5th DCA 2021) ("Any public policy considerations raised by [a statute] are for the legislative branch, not a court." (citing art. II, § 3, Fla. Const.)), *approved*, 339 So. 3d 315, 317 (Fla. 2022) ("[W]hen determining the meaning of a statute, courts do not reach policy considerations where the statute's meaning is clear."). Accordingly, we affirm.

SILBERMAN and SLEET, JJ., Concur.

———————————————————

Opinion subject to revision prior to official publication.